ROBERT SOLTAU, Respondent, *v.* OTTO GERDAU, Appellant.

The provisions of the "Factors Act" (Chap. 179, Laws of 1830), declaring that every factor or other agent intrusted with the possession of merchandise or the documentary evidence of title thereto "for the purpose of sale * * * shall be deemed to be the true owner, so far as to give validity to any contract made by such agent with any other person for the sale or disposition * * * of such merchandise," has no application when a factor or agent has obtained goods taken by a common-law larceny from the true owner.

One S., a rubber broker, by means of false and fraudulent representations that he had effected a sale of a quantity of rubber for plaintiff, obtained from him a delivery order for the rubber, then on board of a steamboat, for the purpose of delivery to the alleged purchaser. By means of such order S. obtained possession of the rubber, stored it and took a warehouse receipt therefor in his own name, which he delivered to defendant to secure an advance, to be paid on sale of the rubber. Defendant sold, and after deducting the advance, paid over the balance to S. In an action to recover possession of the rubber, *held,* that S. obtained possession by a larceny; and so, that defendant acquired no title and was liable for a conversion.

*Baines* v. *Swainson* (4 B. & S. 270) and *Vickers* v. *Hertz* (L. R. [2 S. & D. App.] 113), distinguished.

Reported below, 48 Hun, 537.

(Argued January 24, 1890; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, in favor of plaintiffs, entered upon an order made May 22, 1888, which overruled defendant's exceptions and ordered judgment on a verdict directed by the court, exceptions having been ordered to be heard at first instance at General Term.

This action was brought by the plaintiff to recover the possession, or, in lieu thereof, the value of seventy-six baskets of prime Borneo rubber, F. F., alleged in the complaint to have wrongfully, unlawfully and illegally come into the possession of the defendant between July 1, and November 1, 1885, and to be wrongfully, unlawfully and illegally detained by the defendant from the plaintiff.

The answer of the defendant denies the alleged wrongful possession and detention of the rubber, and sets forth that he came into possession of it through one Henry A. Smith, a broker and dealer in rubber, doing business in the city of New York; that he made advances to him on the rubber on the security of warehouse receipts therefor, made out in his name under an agreement, that, when the market was favorable, or when so ordered, he was to sell the rubber for his account, deduct interest for the loan and a commission, and pay over the surplus to him; and that pursuant to such agreement he did subsequently sell the rubber,

make the deductions agreed upon and pay over the surplus to him.

The action was brought to trial at a circuit, and the material facts there established are as follows : The plaintiff, an importer of rubber and gutta percha, imported on the steamer Canada, which arrived at New York, February 22, 1885, ninety-three baskets of rubber, of which the seventy-six baskets mentioned in the complaint were a part. Smith was a broker in India rubber and had previously acted as such for the plaintiff. Nearly two months prior to February, 1885, he had a conversation with the plaintiff in which he stated to him that he could sell ten tons of Borneo rubber at forty cents to the Goodrich Company, of Akron, Ohio, to which the plaintiff replied that he would sell them that amount and would cable for it. Thereupon Smith addressed a letter to the plaintiff under date of December 8, 1884, as follows : " Goodrich will take ten tons F. F. Borneo at forty cents, but will probably wait ninety days on half of it, or else have it delivered in two lots. Will arrange that later on. Send your cable to-night." On the next day Smith addressed another letter to the plaintiff as follows : " Letter and telegram just found on my return. Closed the Borneo for Goodrich forty cents, one-half commission. Best can do. Will call to-morrow." Thereupon the plaintiff cabled for the ten tons of rubber. Thereafter Smith delivered to the plaintiff the following contract dated December 7, 1884 :

" Sold to THE B. F. GOODRICH Co., Akron, O.,

H. A. SMITH.

For account of ROBERT SOLTAU, Esq.,

About twenty-two thousand (22,000 lbs.) of prime Borneo Rubber (mark F. F.) to be delivered during the first half of the month of March, 1885, @ 40c. per ℔., half cash sixty days after delivery, and half cash 90 days after delivery.

H. A. SMITH,

Half brokerage, H. A. S.     Broker in India Rubber,
No responsibility taken                    17 William Street."
unless by special agreement.

Soon after the arrival of the rubber on the steamer, the plaintiff gave to Smith, as broker, a delivery order therefor, addressed to the steamer company, as follows: "Please deliver to bearer, F. F., ninety-three baskets Borneo rubber, ex. Canada, arrived February 22, 1885." This order was given by the plaintiff to Smith for the sole purpose of enabling him to make delivery of the rubber to the Goodrich company, pursuant to the supposed contract contained in the bought note above set forth. After the delivery order was given to Smith he stated to the plaintiff that the rubber had in fact been shipped to the Goodrich company in fulfillment of the supposed contract of sale; but as matter of fact the alleged contract was a pure fabrication, he never having obtained any such contract or had any negotiations whatever for the sale of the rubber to the Goodrich company. He obtained possession of the rubber by means of the delivery order, and on March 2, 1885, without the knowledge of the plaintiff, he stored the same in the warehouse of Lawson B. Bell, 518 Washington street, New York, and he subsequently took out a negotiable warehouse receipt for it in his own name in the following form:

"No. A. 326.　　　　　　　　New York, *May* 6, 1885.

Lawson B. Bell.　　Received on storage, in 516–18 Washington St.
From Mr. H. A. Smith, and deliverable only upon the return of this receipt, marked ex. S. S. Canada, March 2, '85, F. F.　76 baskets (76) seventy-six baskets rubber.　Storage 4c. per month.　Labor in and out, 4c.
　　　　　　Endorsed:　　　　　　H. A. SMITH."

While the rubber was in Bell's warehouse, unknown to the plaintiff, Smith stated to him that the Goodrich company desired to return seventy-six of·the ninety-three baskets of the rubber claimed to have been shipped to that company on the supposed contract, and thereupon the plaintiff instructed him to take them back. This he made a pretense of doing, and on April 23, 1885, he wrote a note to the plaintiff stating that he had secured the seventy-six baskets from the Goodrich company, and at the same time he sent to him a pretended contract of

sale of the rubber to the Boston Rubber Shoe Company, as follows:

"Sold to Boston Rubber Shoe Co.,

For account of Robert Soltau, Esq., about five (5) tons of prime Borneo rubber, to be delivered at any time during month of July, 1885, at 43c. per lb. net, cash 30 days after delivery.

No responsibility taken unless by special agreement.

H. A. SMITH."

*(margin: H. A. SMITH.)*

Previous to the delivery of this contract of sale, and on or about April fifteenth, Smith had written to the plaintiff that the Boston Rubber Shoe Company would take 100 piculs, F. F. at forty-three cents, July delivery, about seven tons, and he wanted plaintiff to cable for it; but the plaintiff declined to do so and said he would send that rubber to the Boston company which the Goodrich company desired to return. But at this time there had not been, nor was there subsequently, any negotiations whatever between Smith and the Boston Rubber Shoe Company for the sale of the rubber. After sending this last mentioned contract to the plaintiff, Smith stated that he had the seventy-six baskets mentioned therein stored in the warehouse of E. E. Driggs in the name of the plaintiff. Plaintiff requested Smith to deliver to him the warehouse receipts for the same, but he made excuses and the pretended receipts were never delivered to the plaintiff, Smith during all the time having the rubber stored in his own name in Bell's warehouse. For the purpose of further concealing his conversion of the rubber, Smith got from the plaintiff, on or about June 29, 1885, a delivery order for the rubber, addressed to the warehouseman Driggs, with whom the plaintiff supposed the rubber to be stored in his (the plaintiff's) name, as follows: "Please deliver to bearer F. F. 76 baskets Borneo rubber and oblige, yours truly, Robert Soltau." This delivery order was obtained on the pretense and for the sole purpose of making delivery of the seventy-six baskets of rubber to the Boston Rubber Shoe Company. On the seventh of May, Smith took the warehouse receipt received by him

from Bell on the day previous to the defendant, and on the faith thereof received an advance of $2,000 from him and delivered the receipt to him, with the understanding that the defendant might sell the rubber to reimburse himself and pay over the balance of the proceeds to Smith. Thereafter the defendant did sell the rubber, and after deducting the sum advanced by him and interest and commissions, he paid over the balance of the proceeds to Smith.

At the close of the evidence the court directed a verdict in favor of the plaintiff.

*Theodore W. Dwight* and *E. B. Convers* for appellant. The facts of the case appear to show that the plaintiff sold the rubber in question to Smith. In that view the defendant occupies the position of an ordinary purchaser for value and the plaintiff has no cause of action. ( *Whitehead* v. *Tuckett*, 15 East. 400; *Pennell* v. *Alexander*, 3 Ell. & Bl. 283; L. J. [23 Q. B.] 172; Code Civ. Pro. § 449; *Considerant* v. *Brisbane*, 22 N. Y. 389; *Wetmore* v. *Hegeman*, 88 id. 69; *Cobb* v. *Knapp*, 71 id. 348; *Kernochan* v. *Murray*, 111 id. 306; *In re Westzinthus*, 5 B. & Ad. 817; *Spalding* v. *Ruding*, 6 Beav. 376; L. J. [15 Ch.] 374; Note to *Berndston* v. *Strong*, L. R. [4 Eq.] 486; *Kemp* v. *Falk*, 7 App. Cas. 573; Benjamin on Sales, 809, 810.) If there is no evidence of a sale to Smith, the only alternative view is that Smith acted as agent in some form for the plaintiff. In that character Smith had authority to transact the business in question with the defendant, and plaintiff cannot disavow Smith's acts, however wrongful in their own nature they may have been. ( *Whitehead* v. *Tuckett*, 15 East. 400; Story on Agency, §§ 127, 131, 227, 444; 2 Kent's Comm. 620; *Baring* v. *Corrie*, 2 Barn. & Ald. 137; *Boysen* v. *Coles*, 6 M. & S. 14; *Moore* v. *Clementsen*, 2 Camp. 22; *Grant* v. *Norway*, 10 C. B. 665; *Armour* v. *M. C. R. R. Co.*, 65 N. Y. 111; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 id. 195; *Campbell* v. *Wright*, 4 Burr. 2046; *Pickering* v. *Busk*, 15 East. 44; *McCombie* v. *Davis*, 7 id. 5; *N.*

*R. Bank* v. *Aymar*, 3 Hill, 262; *Cooke* v. *Eshelby*, 12 App. Cas. 271; *Hogan* v. *Sher*, 24 Wend. 457; *Raybone* v. *Williams*, 7 T. R. 356, note *a;* *George* v. *Clagett*, Id. 355; 2 Smith's L. C. 77; *McLachlin* v. *Brett*, 105 N. Y. 391; *Boysen* v. *Coles*, 6 M. & S. 14; *Williams* v. *Barton*, 3 Bing. 139; 1 Parsons on Cont. 93; *M. S. Bank* v. *Gardner*, 15 Gray, 362; *M. & T. Ins. Co.* v. *Kizer*, 103 U. S. 352; *Gray* v. *Agnew*, 95 Ill. 315; 2 Kent's Comm. 625, 627; *Rodriguez* v. *Heffernan*, 5 Johns. Ch. 417.) Defendant is protected in making his advances by the so-called "Factors Act," and accordingly, under the facts appearing in this case, the plaintiff has no cause of action. (Laws of 1830, chap. 179; 4 R. S. 2517, 2518; *Cole* v. *N. Bank*, L. R. [10 C. P.] 354, 368, 369.) Smith in the present case was entrusted by the plaintiff with the warehouse receipts issued to him by Bell, since he was entrusted with the delivery order given to him by the plaintiff to obtain an unqualified possession of the goods. (*Cartwright* v. *Wilmerding*, 24 N. Y. 521.) Even if Smith was not sufficiently entrusted with the documents or other *indicia* of title, it certainly cannot be disputed that he was entrusted with the possession of the goods for the purpose of sale within the intent and meaning of the Factors Act, section 3. (*Howland* v. *Woodruff*, 60 N. Y. 73; *Pegram* v. *Carson*, 10 Bosw. 505; 24 N. Y. 521, 536, 537.) The defendant in this case acted in good faith in making his advances on the goods on the apparent ownership and authority of Smith to dispose of them. (*Voorhis* v. *Olmstead*, 66 N. Y. 113.) The facts of the case show beyond dispute the consent of the plaintiff to entrust Smith with the documentary evidence of title as well as with the possession for the purpose of sale. (*Kinsey* v. *Leggett*, 71 N. Y. 387; *Hazard* v. *Fiske*, 18 Hun, 277.) The rights of the defendant are not affected by the fact that Smith dealt with the plaintiff in a fraudulent manner, and that the contracts with Goodrich and the Boston Rubber Company had no existence and were purely mythical. (*Baines* v. *Swainson*, 4 B. & S. 270; L. J. [32 Q. B.] 281; *Vickers* v. *Hertz*, L. R. [2 H. L.] 113; *Sheppard* v. *U. Bank*, 7 H. &

N. 60 ; *Hayman* v. *Flewker*, 13 C. B. [N. S.] 519 ; *Hellings* v. *Russell*, 33 L. T. 380 ; *Cole* v. *N. W. Bank*, L. R. [9 C. P.] 354 ; *Pickering* v. *Busk*, 15 East. 38 ; *Rodliff* v. *Dallinger*, 141 Mass. 1.)    The cases in which the " Factors Act " does not protect the pledgee show by way of contrast that the case at bar does not fall within its protection.    (*Cole* v. *N. Bank*, L. R. [9 C. P.] 354 ; 10 id. 354 ; *Hellings* v. *Russell*, 38 L. T. 380 ; *Stevens* v. *Wilson*, 512 ; 3 Denio, 472.)    The fraud of Smith in inducing the plaintiff to give him the possession of the goods by the delivery order, does not prevent the pledge from being available to the defendant, on the theory that Smith's unlawful act was a statutory theft or larceny.    (*Cundy* v. *Lindsay*, L. R. [3 App. Cas.] 459, 464 ; *Weaver* v. *Barden*, 49 N.Y. 286, 289 ; *Dustin* v. *Livingston*, 9 J. R. 96 ; *McNeil* v. *T. N. Bank*, 46 N. Y. 325 ; *Stevens* v. *Brennan*, 79 id. 254 ; *Bradlee* v. *Whitney*, 108 Penn. St. 362 ; *Dias* v. *Chickering*, 64 Md. 348 ; *Claflin* v. *Cottman*, 77 Ind. 58 ; *Carrie* v. *Raub*, 100 id. 247 ; *Soulsby* v. *Neving*, 9 East. 310, 314 ; 24 & 25 Vict. chap. 96, § 100 ; *Bentley* v. *Vilmont*, L. R. [12 App. Cas.] 471–477 ; *Fitzgerald* v. *Quann*, 109 N. Y. 441 ; *People* v. *Palmer*, Id. 110 ; Penal Code, § 528 ; *Coal* v. *Smith*, 1 Black. 459 ; *Wood* v. *U. S.*, 16 Pet. 342 ; *Bower* v. *Lease*, 5 Hill, 221 ; *Lyddy* v. *Long Island City*, 104 N. Y. 218 ; *Kaltenbach* v. *Lewis*, L. R. [10 App. Cas.] 640.)    The opinion of the General Term in the case at bar is founded on a misconception of the facts, and also, as far as its statements of the facts are correct, on erroneous views of the law, and should not be followed in this court.    (*Ross* v. *People*, 5 Hill, 294 ; *Mowrey* v. *Walsh*, 8 Cow. 238 ; *Bassett* v. *Spofford*, 45 N. Y. 387 ; *Zink* v. *People*, 77 id. 114 ; *Thorne* v. *Turck*, 94 id. 90 ; *People* v. *Dumar*, 106 id. 507, 508 ; Penal Code, § 528 ; *Hugitt* v. *Masker*, L. R. [22 Q. B. Div.] 364, 365 ; L. J. [58 Q. B. Div.] 171, 172.)    The judge at the circuit having erred in directing a verdict for the plaintiff, as well as refusing the request of the defendant to go to the jury under some one or more of the forms set forth in the case, the General Term should have reversed the judgment at circuit.    For failure to do this their own judgment

affirming that of the court below should be reversed. (*Hatfield* v. *Phillips*, 9 M. & W. 649; *Rodliff* v. *Dallinger*, 141 Mass. 1–6.)

*Mark Cohn* for respondent. There was no question of fact for submission to the jury, as the undisputed facts showed a clear case of larceny of the seventy-six baskets of rubber. (*Collins* v. *Ralli*, 20 Hun, 246; 85 N. Y. 637; *Hentz* v. *Miller*, 94 id. 64; *Bassett* v. *Spofford*, 45 id. 387.) As a question of law the case was properly disposed of by the learned court at circuit. (*Collins* v. *Ralli*, 20 Hun, 246; *Hentz* v. *Miller*, 94 N. Y. 64; *Smith* v. *People*, 53 id. 113.) The question raised by the defendant, for the first time on the argument at the General Term, that there is no evidence that the Goodrich contract was not a *bona fide* transaction, is not well taken. (*Cohn* v. *Goldman*, 76 N. Y. 284, 287; *Mead* v. *Shea*, 92 id. 122–127; *A. B. & C. Co.* v. *Pratt*, 10 Hun, 443, 444; *Thayer* v. *Marsh*, 75 N. Y. 340; *Coates* v. *F. N. Bk.*, 91 id. 20–31; *Osgood* v. *Toole*, 60 id. 475–478, 479; *Fargo* v. *Davis*, 8 N. Y. S. R. 12; *Spikerman* v. *McChesney*, 20 id. 79; 111 N. Y. 686; *Genet* v. *City of Brooklyn*, 114 N. Y. 618; *Fell* v. *N. Y. L. Works*, 22 N. Y. S. R. 577; *Mullinhoff* v. *Scherer*, 17 id. 387; *D. S. M. Co.* v. *Best*, 50 Hun, 76; *Gardiner* v. *Schwab*, 110 N. Y. 650; *Averill* v. *Ward*, 17 N. Y. S. R. 675.)

EARL, J. The trial judge held that the facts of the case showed that the broker Smith obtained the rubber from the plaintiff by larceny, and upon that ground directed the verdict. There were no disputed facts and we think the evidence so clearly established the larceny that there was nothing in reference thereto to submit to the jury. It is entirely clear that Smith intended from the beginning of his negotiations with the plaintiff in reference to the rubber, to steal it. No other conclusion or inference from the evidence is justifiable. The plaintiff did not intend to part with the title of the rubber to Smith, and at most intended that he should have possession of it for a special purpose. He meant only to part

with the possession of the rubber to Smith that he might make delivery of it to the Goodrich company under the prior contract of sale, while Smith intended to steal the rubber; and thus the crime of larceny was committed. (*Bassett* v. *Spofford*, 45 N. Y. 387; *Loomis* v. *People*, 67 id. 322; *Thorne* v. *Turck*, 94 id. 90; *People* v. *Morse*, 99 id. 662; 2 Bishop on Cr. Law [7th ed.], §§ 799, etc.)

At the time the first delivery order was delivered to Smith, the property was legally in the possession of the plaintiff, and the moment Smith took it he became a trespasser, the theft was complete, and he could at once, without any demand, have been sued for the trespass. The title of the property and the right of possession remained in the plaintiff, and he was deprived of the actual possession thereof wholly by the trespass and theft. In the law he never consented to part with the possession of the property, and Smith never had possession thereof, rightfully or legally, for one moment. Nothing which subsequently occurred changed the character of Smith's possession. The subsequent delivery order which the plaintiff was induced to give to him, directed to Driggs in whose warehouse he falsely represented the rubber to be, had no effect whatever. It gave Smith no dominion or control of the rubber, and in no way divested the plaintiff of any control or possession thereof which he then had. It was absolutely nugatory for every purpose. The property had then for nearly two months been stored in the warehouse of Bell in Smith's own name, and the warehouse receipt had for nearly two months been pledged to the defendant. From the time Smith first took possession of the rubber, his possession, so far as he had any, was solely that of a thief, and the actual possession and control of the property was never thereafter restored to the plaintiff. The plaintiff must, therefore, be treated as having been deprived of his property by the common-law crime of larceny, and it follows that the thief could not, independently of the Factors Act, confer any title or right of any kind, as against the plaintiff, upon any other person. The defendant, therefore, got no right to this rubber

and had no right to deal therewith, or dispose of the proceeds thereof in any way, and the plaintiff's recovery against him is unquestionably right, unless he is protected by the Factors Act.

It is provided in section 3 of the act, chapter 179 of the Laws of 1830, commonly called the Factors Act, as follows: "Every factor or other agent entrusted with the possession of any bill of lading, custom-house permit or warehouse keeper's receipt, for the delivery of any such merchandise, and every such factor or agent, not having the documentary evidence of title, who shall be entrusted with the possession of any merchandise for the purpose of sale, or as a security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise, for any money advanced, or negotiable instrument or other obligation in writing given by such other person upon the faith thereof." Statutes similar to this have for many years existed in England, and in most, if not all, the states of the union, and it has never yet been held, nor, so far as we can discover, claimed in any reported case that the Factors Act can have any operation whatever in the case of goods taken by a common-law larceny from the true owner. If the documents mentioned in the section quoted have been stolen from the owner, then it cannot be said that the thief was entrusted with their possession; and when a factor or agent obtains goods from the true owner by a common-law larceny, it cannot be said that he is entrusted with their possession for the purpose of sale. To bring the case within the section quoted, the factor or other agent must be consciously and voluntarily entrusted with the possession of the documents or merchandise, and the section can have no application whatever to a case where the documents or goods are taken by trespass or theft, and thus the possession of the factor or agent is, from the beginning, tortious, wrongful and unlawful.

The first section of the Factors Act provides as follows: "After this act shall take effect, every person in whose name any

merchandise shall be shipped shall be deemed the true owner thereof, so far as to entitle the consignee of such merchandise to a lien thereon," for any money advanced or negotiable security given, etc. ; and yet, notwithstanding the broad and explicit language of this section, it was held in *Kinsey* v. *Leggett* (71 N. Y. 387) that it has no application to a case where the property has been wrongfully taken from the possession of the owner and then fraudulently appropriated, and that it applies only to cases where the shipment of the property is made with the consent of the real owner in the name of another, thus conferring upon the latter apparent ownership and right of control.

In *Howland* v. *Woodruff* (60 N. Y. 73), it was held that the Factors Act was intended for the protection of third parties who, in good faith and in ignorance of any defects of title, advance money or incur obligations upon the faith of merchandise and the apparent ownership thereof by factors or agents who have been entrusted by the owners with the possession of, or with the documentary evidence of title to property ; that it is the act of the owner in thus conferring upon his factor the apparent ownership and right of disposal, together with the fact that an innocent third person has dealt with the latter in reliance thereon, that estops the former from following his property ; but that in order to estop the owner, where the factor has not the documentary evidence of title, actual possession is required. In that case ALLEN, J., said : " It is the act of the owner in entrusting the factor with the possession of the goods, or the documentary evidence of ownership and right of disposal, in connection with the fact that innocent third persons deal with him on the faith of such apparent ownership, that estops the owner from following his property into the hands of *bona fide* vendees or pledgees, and gives the latter a better title than their vendor or pledgor had." The doctrine of estoppel has never been applied against an owner who has been deprived of his property by larceny. Judge ALLEN further said, that it was not the interest or the general scope of the act to deprive owners of their property without

any fault or act of theirs, and that "the act was intended for the security of those who deal with a factor or agent in the belief that he is the true owner, and that belief must be induced by the act of the owner in entrusting the factor or agent with the apparent ownership." An owner who is deprived of his property by theft is guilty of no act upon which another has the right to rely, and cannot in law be said to entrust the thief with his property.

The case of *Collins* v. *Ralli* (20 Hun, 246), affirmed in this court (85 N. Y. 637) upon the opinion delivered in the Supreme Court, is entirely analagous to this, and is a very precise authority for the conclusion we have reached. There H. M. Cutler, a cotton broker, called upon the plaintiff and, by falsely and fraudulently representing that he was authorized to purchase cotton for certain mills in Massachusetts, induced the plaintiff to sell certain cotton to the mills and deliver to him a bill of sale thereof to the mills. Upon the representation that he desired to ship the cotton immediately, Cutler procured from the plaintiff a delivery order upon the warehouseman, at whose warehouse Cutler had the cotton weighed and marked and loaded upon a truck. Subsequently Cutler stored the cotton in another warehouse and took out receipts therefor from the keeper of such warehouse in his own name first, and afterwards in the name of his brokers. Thereafter the defendants purchased the cotton in good faith, and for value, through their brokers, receiving the warehouse receipts therefor, and subsequently shipped it to Liverpool. Cutler having absconded without paying for the cotton, the plaintiff brought the action against the defendants to recover the value of the cotton received and converted by them; and it was held that Cutler was guilty of larceny in fraudulently obtaining the temporary custody of the cotton, and thereafter converting it to his own use, and that the defendants acquired no title to it by reason of his transfer of it to them; that, as the plaintiff had merely entrusted Cutler with the temporary possession of the cotton, to enable him to weigh and cart it for shipment to the pre-

tended purchasers, and had never conferred upon him the
apparent title thereto, or any authority to dispose thereof, he
was not estopped from reclaiming it from the defendants though
they had purchased it in good faith ; that the defendants were
not protected by section 6 of chapter 326 of the Laws of 1858,
providing that warehouse receipts may be transferred by
indorsement, and that any person to whom the same may be
transferred shall be deemed and taken to be the true owner of
the goods therein specified, so far as to give validity to any
pledge, lien or transfer made or created by such person or
persons, as such provision only applies to receipts given for
goods stored or deposited by persons having the title thereof,
whether real or apparent, or authority so to do from such real
or apparent owner.    There, as here, the broker pretending
that he had effected a sale of the goods, obtained a delivery
order from the plaintiff, and, thus having obtained possession
of the goods, stored the same in his own name, and thereafter
sold them to a *bona fide* purchaser.    That case was subse-
quently followed by *Hentz* v. *Miller* (94 N. Y. 64), growing
out of the misconduct of the same broker.    The learned counsel
for the defendant has attempted to distinguish those cases from
this.    His attempted distinctions are very ingenious, but we fail
to find any distinction in principle between them and this case.

The decision of this case could, we think, be put upon a
narrower ground than the one upon which we have thus far
placed it.    The delivery order given by the plaintiff to Smith,
that he might make delivery of the rubber to the Goodrich
company, was not, within the meaning of the Factors Act,
documentary evidence of title.    It was not a bill of lading,
custom-house permit or warehouse keeper's receipt.    It was no
evidence whatever of title, and whatever it was it was not seen
by the defendants and they did not act on the faith thereof.
Nor was Smith entrusted with the possession of the rubber
" for the purpose of sale."    So far as the plaintiff entrusted him
with the possession, it was simply that he might make delivery
of the rubber in pursuance of the contract of sale which he
pretended he had nearly three months previously obtained.

There is, therefore, no aspect of this case, either at common law or under the Factors Act, from which it can be said that the defendant obtained any title whatever to the property of the plaintiff.

The learned counsel for the appellant, in his argument, places great reliance upon the case of *Baines* v. *Swainson* (4 B. & S. 270). There the plaintiffs, cloth manufacturers, were applied to by one Ernsley, who was a factor and commission agent, for a sample of their cloths, on the representation that he could get them a purchaser. The samples having been sent, Ernsley afterward told the plaintiffs that he had got them an order for a certain number of ends at a stated price. The plaintiffs required to know the purchasers, and, Sykes & Son being mentioned, they sent the goods to the warehouse of Ernsley, who was to pass them on to Sykes & Son after seeing the process of perching performed upon them, for which he was to receive a commission from plaintiffs of one shilling per end. Ernsley had no authority from Sykes & Son, and he sold the goods to the defendants, who were cloth merchants, and bought them *bona fide ;* and it was held per WIGHTMAN and CROMPTON, JJ., that Ernsley was an agent "entrusted" with the cloths within the meaning of the Factors Act (6 G., 4 C., 94, § 4, and 5 & 6 Vict. chap. 39, § 4), and that consequently the purchase of them from Ernsley by the defendants was protected; and per BLACKBURN, J., that Ernsley being in possession of the goods was, according to the statutes (5 & 6 Vict. chap. 39, § 4), to be taken to be "entrusted" with them by the owner, unless the contrary was shown, and that was a question for the jury. Under those statutes, to bring a transaction within their provisions, it was not necessary that the goods should be entrusted to an agent for sale, but it was sufficient if there was any mercantile agency; and if the goods were entrusted to a person whose business it was to deal in goods and make sales of them, he was such an agent as was contemplated by the statutes, although they were not entrusted to him for sale. Our Factors Act is different. In order to bring a case within it,

it must appear that the goods were entrusted to an agent for
sale, and it is not sufficient that they were entrusted to a mere
commercial agent, or to one whose business it was to make
sales of goods. Our statute contemplates the act of the owner
in voluntarily and specifically entrusting the goods to some
factor or agent for sale, and to no other agent and for no
other purpose. It is by no means certain that that case
would have been decided the same way if the English Factors
Act had been like ours. That case is further distinguished
from this in that there was no claim made there that the
goods had been obtained by Ernsley from the plaintiffs by
larceny, and the question of larceny received no considera-
tion. So, while that case bears some analogy to this we do
not consider it of controlling weight. The case of *Vickers*
v. *Hertz* (L. R. 2 S. & D. App. 113) is also clearly dis-
tinguishable from this. There Vickers ordered 800 tons
of pig iron from the Carron company, and, while they held
it at his disposal, he employed Campbell Bros. to sell it for
him. They wrote to him : "We can now get your price."
He agreed, and sent them an order in the following terms :
"To the Carron company. Please deliver to Messrs. Camp-
bell Bros." Campbell Bros., instead of employing the docu-
ment for the purpose of giving delivery to the supposed pur-
chaser, represented the iron as their own, and asked Hertz to
make them an advance upon it. Hertz declined until the
document should be stamped and a place of delivery inserted
by Vickers. These requirements having been satisfied by
Vickers, the Carron company wrote to Hertz saying : "We
have placed the pig iron indorsed by Thomas Vickers, Esq.,
to your credit." Hertz thereupon advanced to Campbell
Bros. £2,400. The act of Campbell Bros. was a gross fraud
upon Vickers, who knew nothing of the transfer to Hertz,
although he had unsuspectingly facilitated its accomplish-
ment. Campbell Bros., having become bankrupt, disappeared,
and an action was brought by Vickers against Hertz for a
delivery of the iron. The defense was that the iron had been
acquired by Hertz legitimately under an order indorsed by

Vickers and delivered by his factors to Hertz, who afterward sold it for less than he had advanced upon it. Judgment was given in favor of the defendant in that case, which upon appeal was affirmed. There was no question of larceny considered. That case was decided under 5 and 6 Victoria, chapter 39, in the 3d section of which it is provided, that " any agent entrusted with the possession of goods, or of the documents of title to goods, shall be deemed and taken to be the owner of such goods and documents, so far as to give validity to any contract or agreement by way of pledge, lien or security, *bona fide* made by any person with such agent so entrusted; " and in section 4 of which it is provided " that any order for the delivery of goods, or any other document used in the ordinary course of business as proof of the possession or control of goods, shall be deemed and taken to be a document of title within the meaning of this act; " and it was held there that the delivery order given by the plaintiff to Campbell Bros. was a document of title within the express and plain meaning of the act, and that, therefore, the defendant, a purchaser from them, was protected.

It is not very profitable to enquire what would have been the position and rights of these parties if the sales pretended to have been made by Smith had been real, or, if the rubber had been, by the delivery orders, placed in his hands for sale on behalf of the plaintiff, an undisclosed principal. The pretended sales, and all the other pretences of Smith, were mere shams — devices used by him to accomplish the larceny, and the fact of larceny must dominate this case. The rubber was never in his possession for sale. Six weeks before it arrived in this country he had, as a broker, made the pretended sale to the Goodrich company, and, after its arrival, he obtained the delivery order, not to make a sale, but to make a delivery of the rubber upon a contract, which, if real, was previously binding upon the parties thereto.

But, if the pretended contract of sale to the Goodrich company had been real, and the plaintiff had given to Smith the delivery order to enable him to obtain possession of the rubber

for delivery upon the contract, this action would still be unde-
fended.    In that case, if he obtained the delivery order with
the preconceived design to convert the rubber to his own use,
he would have been guilty of larceny with the effect and dis-
ability above mentioned.  If he conceived the design to appro-
priate the rubber to his own use after it came into his posses-
sion, he would not have been guilty of larceny, but would still
have been unable to confer any title thereto upon the defend-
ant.    Then he would have had possession of the rubber for
the sole purpose of making delivery thereof upon a real con-
tract and he would have had the mere possession thereof and
nothing else.   He would have been clothed with no *indicia* of
title and with no apparent right to sell.   While mere possession
of goods is frequently *prima facie* evidence of title, it is
merely *prima facie.*   Whoever deals with the possessor, does
it at his peril, and a purchaser from one having no other appar-
ent title to goods than the possession thereof must see to it that
his seller has the title ; and if his title fails, and he is obliged
to respond to the true owner of the goods, his loss is due to
his own misplaced confidence, and not to that of the owner.
Owners of goods, for commercial and other purposes, must,
frequently, entrust others with the possession of them, and
the affairs of men could not be conducted unless they could
do so with safety.   So long as the possession of the goods
is not accompanied with some *indicia* of ownership, or of
right to sell, the possessor has no more power to divest the
owner of his title, or to affect it, than a mere thief.   Here
the defendant could have inquired into the title of Smith
before he took the rubber in pledge, and his loss is due
not to any wrong, neglect or misplaced confidence of the
plaintiff, but to his own neglect and abused confidence.  Smith
having received the goods for delivery to the Goodrich com-
pany could no more pledge them than a common carrier, a
depositary, a bailee to do some work upon them, or a mere
servant.  He had no general agency, but his power was limited
to the special purpose for which the rubber was given into his
possession.  A valid contract of sale having been made bind-

ing upon the plaintiff, he was not bound to make delivery through his broker, but he could have delivered the rubber through any other agent; and no one will claim that if the rubber had been put into the possession of a mere agent (not the broker) for delivery, a purchase from such agent would have divested the plaintiff of his title.

A little more may be said to show that Smith obtained no title to the rubber. There is no real evidence that it was intended by him or the plaintiff that he should have the title. He solicited of the plaintiff the right to act as his broker. He delivered to the plaintiff a bought note showing that the rubber was sold in his name and as his property; and if the transaction had been real he would, according to the previous custom and his understanding with the plaintiff, have given the purchaser a sold note indicating a sale on account of his principal without writing therein the principal's name. Thus he would have brought the seller and buyer together, and would have made a contract of sale binding upon them, incurring no responsibility himself but that of broker. (*Southwell* v. *Bowditch*, L. R. [1 C. P. Div.] 374). He obtained the delivery order, not to deliver rubber upon his contract, but upon plaintiff's contract. He consulted the plaintiff about taking the rubber back from the Goodrich company, and obtained his consent therefor. He subsequently professed to store it in plaintiff's name, and at all times subsequently professed to the plaintiff to deal with and treat it as his. Clearly, beyond any question, the plaintiff and Smith understood that the title to the rubber was in the plaintiff and never in Smith; and without the intention of one or both of them it could not pass from the plaintiff to Smith. The entries upon the plaintiff's books in reference to the rubber were mere matters of bookkeeping, having no reference to the title to the rubber, but merely to the proceeds which were expected to reach plaintiff's hands through Smith as his broker.

We have given careful attention to the exhaustive and learned brief of the counsel for the defendant, and while this case is not free from some difficulty, we are constrained to hold

that it was properly disposed of below, and that the judgment there should be affirmed, with costs.

All concur, on the ground that there was a common-law larceny, except RUGER, Ch. J., PECKHAM and GRAY, JJ., dissenting.

Judgment affirmed.