plaintiff would permit such interference with the plaintiff's work as would prevent its completion within the time set therefor, upon which its franchise is conditional. The plaintiff will be irremediably damaged if the doubt were now resolved against it. The defendant, on the other hand, cannot be prejudiced by the postponement. For this reason the court may well refuse to determine the question upon the present motion, and, instead, may properly make a restraining order permitting the continuance of the work under the alleged franchise until the question may be tried in court according to the rules of evidence. Upon this ground, as well as upon the merits, the plaintiff's motion for a continuation pendente lite of the preliminary injunction is granted.

Motion granted.

---

(113 App. Div. 555.)

### BEKEN v. KINGSBURY et al.

(Supreme Court, Appellate Division, Fourth Department. May 23, 1906.)

1. FACTORS—PLEDGES—ADVANCEMENTS—OWNERSHIP—NOTICE.

In an action for conversion of certain hops shipped by plaintiff to a factor and by him pledged to a warehouseman, evidence *held* sufficient to put the pledgee on inquiry as to the ownership of the hops, though it was insufficient to establish that the pledgee had knowledge that the factor was not the owner.

2. SAME—ADVANCEMENTS—BURDEN OF PROOF.

Where a factor pledged to a warehouseman certain hops which were in the factor's possession for sale on commission, the burden was on the pledgee in an action by the owner for conversion of the hops to establish the amount advanced on them after they came into the factor's possession.

3. SAME—REDEMPTION.

Where a factor pledged certain hops which were in his possession for sale on commission, the owner of the hops was entitled to redeem the property at any time before sale by the pledgee, whether the advancements to the factor were made as authorized by Factor Law, Heydecker's Gen. Laws, p. 4792, c. 34, § 3, or whether the pledgee only had a lien on the hops for cartage, storage, etc., as authorized by Lien Law, Laws 1897, p. 533, c. 418, § 73.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Factors, § 83.]

4. SAME—PLEDGES—SALE—CONVERSION.

Where a factor pledged certain hops to secure advancements, and the pledgee was charged with notice that the factor was not the owner, the pledgee had no right to sell the hops except at public sale as provided by Lien Law, Laws 1897, p. 534, c. 418, §§ 80–82, and hence a private sale thereof amounted to a conversion.

Appeal from Special Term, Oneida County.

Action by Henry Beken against Sherman Kingsbury and the F. C. Linde Company. Judgment for plaintiff, and defendant Kingsbury appeals. Affirmed.

The following is the opinion of Referee Southworth:

The undisputed facts in this case are substantially as follows: The plaintiff, Henry Beken, was in August, 1899, a farmer living at or near Vernon, in Oneida county. For a great many years he had been a hop grower. In August, 1899, he had two or three crops of hops on hand. He had his 1896 and 1897 hops. In August, 1899, the defendant Sherman Kingsbury was a commission merchant, residing in the city of New York, and with his place

of business at No. 284 Washington street, New York, and had been in that business for many years. About May, 1899, Kingsbury, accompanied by one Orville W. Knox, called upon Beken and tried to induce him (Beken) to ship his hops to New York, to Kingsbury, to sell on commission. At this interview Kingsbury made many statements and representations to Beken, which were unquestionably false and fraudulent, and were unquestionably made to induce Beken to so ship his hops. This Beken did not agree to do at that time. Between that time and August Kingsbury wrote several letters to Beken, which letters contained statements of the same general nature as the statements in the conversation. Mr. Beken was induced by this conversation and these letters to ship to Kingsbury eighty-seven bales of hops as follows: August 8, 1899, 34 bales of 1896 hops. August 12, 1899, 53 bales of 1897 hops. At this time the defendant Linde Company were in the warehouse business in New York, and also made loans upon goods stored in its warehouse. About the 1st of March, 1898, defendant Kingsbury called upon the Linde Company with view of storing hops in its warehouse and of getting advances made on hops so stored. What occurred between Kingsbury and the officers of the Linde Company on this and subsequent interviews is sharply contradicted, but it resulted in an arrangement whereby Kingsbury was to store hops there and the Linde Company was to make some advances on them.

Under this arrangement about March 10, 1898, Kingsbury delivered to the Linde Company 36 bales of hops and took from the Linde Company a negotiable warehouse receipt, No. 16,128. What advance by way of money was made to Kingsbury at that time does not appear. It does appear, however, that Kingsbury then and there indorsed the warehouse receipt and returned it to the Linde Company, and at the same time gave them a promissory note for $126. This note recites, among other conditions, as follows: "Having deposited as collateral security for the payment of this note, and also as collateral security for all other present and future demands, of any and all kinds, of the holder hereof, against the undersigned, due or not due, the following property, viz.: Thirty-six bales of hops, described in storage receipt No. 16,128." At various times thereafter, and prior to August, 1899, Kingsbury received several other shipments of hops, which were received by the defendant Linde Company, and in every case substantially the same transaction occurred as to the warehouse receipts and notes as in the first case. When the Beken hops arrived in New York, Kingsbury notified the Linde Company, and it sent its trucks to the railroad and moved the hops to its storehouse and paid the freight, to wit, $20.47 on the 34 bales and $33.33 on the 53 bales; the 34 bales being received by the Linde Company August 11th, and the 53 bales August 17th. On the 18th day of September the Linde Company gave Kingsbury a warehouse receipt for 100 bales of hops. On the margin of this receipt was the following indorsement: "Store B. December 23rd, '98, 13 bales. Store 3, August 11th, '99, 34 bales. Store 3, August 17th, '99, 53 bales." There was no direct evidence that the 34 bales and 53 bales mentioned in this receipt were the Beken hops, but I think it a reasonable inference that they were. This warehouse receipt, No. 16,843, was indorsed by Kingsbury and left with the Linde Company. At the same time Kingsbury gave the Linde Company a note for $213.76. This note contained the same provisions above set out in the first note, but referred to 100 bales of hops and warehouse receipt No. 16,843. Kingsbury had nothing to do with the hops in New York, except to notify the Linde Company of their arrival. It does not appear that Kingsbury had any bill of lading of these hops. Defendant Linde Company kept the Beken hops and all of the other hops until August 30, 1900, when they were all sold at private sale to one person. There was no notice of any kind given the plaintiff of the sale, or that the Linde Company intended to sell them. There was no notice given Kingsbury of the time of the sale until afterwards, nor were there any of the notices required by sections 81, 82, of the lien law (Laws 1897, p. 534, c. 418) given by the Linde Company.

Plaintiff having been induced by the false and fraudulent representation of Kingsbury to ship these hops, it is a question whether Kingsbury ever

had such possession of the hops as is contemplated by section 3 of the factor law (Heydecker's Gen. Laws, p. 4792, c. 34). Soltau v. Gerdau, 119 N. Y. 384, 23 N. E. 864, 16 Am. St. Rep. 843; Howland v. Woodruff, 60 N. Y. 73; Hentz v. Miller, 94 N. Y. 64. This, however, I shall not attempt to decide. I shall assume that Kingsbury was actually in the possession of the hops for the purpose of sale. Assuming this, two questions arise: First. Did the Linde Company, at the time the note was given, have any knowledge that Kingsbury was not the owner of these hops, or did they have any knowledge or information sufficient to put them on inquiry as to that fact? Second. What, if any, advances were made on the Beken hops?

As to the first proposition, Kingsbury says that at his first conversation with the officers of the Linde Company he told them the hops were "commission hops." This is denied by the officers of the Linde Company, who say that on the contrary he told them they were his hops. In each of the notes which Kingsbury signed are the words, "I am the sole and absolute owner [of the hops] and the same is now free and clear from all liens or incumbrances whatsoever." In view of this testimony, I cannot find that the Linde Company had knowledge that Kingsbury was not the owner. The only evidence in the case bearing upon the question that the defendant Linde Company had information sufficient to put them on inquiry as to who was the owner of the hops is the evidence of Mr. Ross, corroborated by two or three other witnesses. Peter Ross is a farmer living in the western part of the state. In the spring of 1899 he had shipped hops to Kingsbury to be sold upon commission. These hops were stored with the Linde Company under the same conditions as the other hops. Some time in the summer or fall of 1899 Mr. Ross went to New York and had an interview with the president of the Linde Company. He told him the conditions under. which the hops were shipped to Kingsbury. He also told him that his neighbors, Norgate, Hamilton, and Wilson, had hops stored there that were shipped to Kingsbury under similar conditions. He said that the president of the Linde Company agreed to let him take his hops away; that in reliance upon that he arranged through a broker to sell his hops, but when the purchaser went to get them the Linde Company had refused to let them go unless he paid something like $285. He went a second time to New York, and again saw Mr. Gibson, in company with Mr. Carr, an attorney, and Mr. Dillenbeck, a broker. At this conversation the subject of Mr. Ross' ownership of the hops was talked over, but the Linde Company refused to release them unless the amount above stated was paid. These facts are not disputed by the officers of the Linde Company. The difficulty of this evidence, as far as the plaintiff is concerned, is that Mr. Ross did not definitely fix the time at which he was in New York. He said he thought it was in August, 1899, but was uncertain about it. The lapse of time between the first and second visits does not appear. The other persons fixed the time of the second visit as being in September, October, or November. In view of the uncertainty of this testimony, I cannot say that at the time the Beken hops were received by the Linde Company, or at the time the warehouse receipt and note were given, the Linde Company had received this information from Mr. Ross.

What advancements, if any, were made upon the Beken hops? The Linde Company undoubtedly paid the freight, which according to the freight bills amounted to $53.80. There is absolutely no evidence of any other advancement being made on the Beken hops. Kingsbury says repeatedly that no advancements were made on the Beken hops; that he asked for advancements on them, and the Linde Company refused to give any. It seems to me that unquestionably the burden was on the Linde Company to show that advancements were made to Kingsbury on these hops after they were in Kingsbury's possession, and the amounts of such advancements, if any. This feature was brought sharply to the Linde Company's attention by Kingsbury being asked the question several times, and by the attorneys for the plaintiff examining George Secor, the treasurer of the Linde Company, who said he would not swear that the last advancements were not made before the 1st of August, 1899. If any advancements were made the Linde Company could easily have proved the amounts and when made. The only evidence that can be construed as contradicting Kingsbury is that of Mr. Van Name, secretary of the Linde Company. He

says, in speaking of the note in question, it was given "for advances made to him—money advanced on his account." He gives no information as to how much was advanced, or when advanced. His statement would be absolutely true if not a dollar had been advanced since the first advancement in March, 1898, as the note states on the face of it that the security given is "for all other present or future demands of any and all kinds." Can I say, in face of these facts, because the note is given for $213.70, that that amount was advanced to Kingsbury in money on that date, or at any time subsequent to the time Kingsbury received the hops? On the contrary, I think it is clear that there was included in each of the notes something besides money advanced—certainly freight and cartage, and possibly both storage and interest. Kingsbury says that the note covering the 100 bales of hops was a blanket note on account of past-due indebtedness. This is not in terms disputed. The reading of the note indicates that this might be so; that is, the notes give them the right to demand other security at any time. If there had been any advancement made on the Beken hops, the Linde Company could have easily proven what the advancement was. This they did not do. Upon the evidence I find that the only advancement made on the Beken hops was the sum of $53 paid for freight.

At the time of the sale of this property, in addition to the amount paid for freight, the Linde Company probably had a lien upon the goods sold, under section 73 of the lien law, for the cartage and storage of these hops. If advancements had been made under section 3 of the factor law, or if the Linde Company had only a lien under section 73 of the lien law, the plaintiff undoubtedly had a right to redeem this property at any time before the sale. The plaintiff had no knowledge or information that these hops were in the possession of the Linde Company, or that the Linde Company had a lien upon them of any kind. On the other hand, according to the evidence of Ross, Carr, and Dillenbeck, the Linde Company had notice at least as early as November, 1899, that Kingsbury was not the owner of all the hops stored with the Linde Company. The Linde Company had notice also by Kingsbury's letter, dated May 23, 1900 (Exhibit M), that Kingsbury was a commission merchant, and by Kingsbury's letter of June 12, 1900 (Exhibit N), that the hops that the Linde Company held were "grower's hops." It seems to me that the facts beyond question were sufficient to put the Linde Company upon inquiry as to who were the true owners of the hops. It also seems to me that it would not have been difficult for them to have ascertained who were the owners, but they did absolutely nothing in this direction. Under this condition of affairs, if the Linde Company had made advances as contemplated by section 3 of the factor law, whether or not the Linde Company could have sold this property without notice under the power given in the note I shall not attempt to decide. Inasmuch as the only lien that the Linde Company had upon these hops is the lien contemplated by section 73 of the lien law, as against the plaintiff at least (with the notice that it had that Kingsbury was not the owner of the hops stored with it), it had no right to sell these hops, except at public sale as provided by sections 80, 81, and 82 of the lien law. This it did not attempt to do. Consequently the sale of the plaintiff's hops on August 30, 1900, was an illegal sale and a conversion of plaintiff's hops. Robinson v. Wappans, 34 Misc. 199, 68 N. Y. Supp. 815; Sand v. Rosenagel, 40 Misc. 666, 83 N. Y. Supp. 255; Todd v. Haeger, 12 N. Y. St. Rep. 633; Smith v. Savin, 141 N. Y. 315, 36 N. E. 338.

On the question of the market value of the hops there is quite a diversity of evidence. I think it is entirely fair to the defendants to say, from the testimony of Mr. Lilienthal, one of the defendant's witnesses, that the hops were reasonably worth 5 cents per pound August 30, 1900. According to the freight receipts produced by the Linde Company the total amount of plaintiff's hops were 16,302 pounds. This was subject to tare of 5 pounds per bale, or 435 pounds, leaving the net weight of plaintiff's hops 15,876 pounds. At 5 cents per pound this would amount to $793.35. The freight paid by the Linde Company was $53.80. According to the evidence of Kingsbury they were to receive 8 cents per bale for carting and 8 cents per month per bale for storage. The cartage would amount to $6.96; the storage for 13 months

would be $90.48—making a total for freight, carting, and storage of $151.24. This deducted from $793.35 leaves a balance of $642.11.

Plaintiff should have judgment against the defendant for $642.11, with interest on same from August 30, 1900, with costs of this action.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Davies, Johnson & Wilkinson, for appellant.
M. B. Hall, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of Referee Southworth.

---

(51 Misc. Rep. 337.)

### In re 112TH AND 113TH STS. IN CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. July, 1906.)

EMINENT DOMAIN—PROCEEDINGS FOR CONDEMNATION—QUALIFICATIONS OF COMMISSIONERS OF ESTIMATE.

New York City Revised Charter, Laws 1901, p. 610, c. 466, provides, in relation to the acquisition of lands for public purposes, that commissioners of estimate shall be appointed, who shall be subjected to challenge on any ground disqualifying a juror. Code Civ. Proc. § 1027, provides, as to the general qualification of jurors, that a person must be assessed for personal property to the amount of $250, or the owner of a freehold estate situated in the county belonging to him in his own name and of the value of $150, or the husband of a woman who is the owner of a like freehold estate. Section 1034 provides that section 1027 shall not apply to the city and county of New York or the county of Kings. The qualifications of a juror in New York county, as provided by section 1079, are that he must be the owner in his own right of real or personal property of the value of $250, or the husband of a woman who is the owner in her own right of real or personal property of that value. Section 1126 provides that a juror in the county of Kings must be the owner in his own right of real property of the value of $150, or of personal property of the value of $250, or the husband of a woman being the owner of such real or personal property of such value in her own right. Held, that the provisions of section 1027 do not apply to commissioners in New York county, but their qualifications are governed by section 1079, though otherwise there are different qualifications in the different boroughs.

Judicial proceeding in the matter of the application of the board of education relative to the acquisition of lands on 112th and 113th streets, New York, for school purposes. Objection by property owners to the qualifications of one of the commissioners of estimate and appraisal. Objection overruled.

Edward W. Murphy (Joseph A. Flannery, of counsel), for objecting property owners.
John J. Delany, Corp. Counsel (Charles N. Harris, of counsel), opposed.

GIEGERICH, J. A challenge has been made on behalf of owners of property affected by this proceeding to the qualification of one of the commissioners of estimate and appraisal heretofore appointed. Section 1437 of the revised charter (Laws 1901, p. 610, c. 466) provides that: