### SWEENEY v. PROVIDENT LOAN SOCIETY OF NEW YORK.

(Supreme Court, Appellate Term. January 27, 1910.)

1. EXECUTORS AND ADMINISTRATORS (§ 87*)—PERSONAL PROPERTY—DELIVERY BY EXECUTRIX—RATIFICATION.

   Before qualifying as such, an executrix saw a ring belonging to testator handed to one B., but made no objection thereto, though afterwards, on qualifying, she demanded the ring from B., who gave her a receipt for the same. Thereafter she brought an action against B., and obtained judgment for damages against him. Held, that there was no ratification of delivery of the ring, precluding replevin to recover the ring from one to whom B. pawned it.

   [Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 87.*]

2. PLEDGES (§ 6*)—TITLE OF PLEDGEE.

   The mere possession of goods being merely prima facie evidence of ownership, one to whom goods are pledged by the person having them in his possession acquires no title as against the real owner.

   [Ed. Note.—For other cases, see Pledges, Dec. Dig. § 6.*]

   Lehman, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Adele Sweeney, as executrix, etc., against the Provident Loan Society of New York. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before GIEGERICH, DAYTON, and LEHMAN, JJ.

W. C. Abercrombie, for appellant.

De Forest Bros., for respondent.

DAYTON, J. Plaintiff sues in replevin to recover a diamond ring pawned by William C. Blair for $65 with defendant. Daniel C. Blair died September 3, 1907, leaving a will whereby he bequeathed the ring in question to the daughter of William C. Blair. Letters testamentary were issued to plaintiff October 17, 1907. Shortly after the death of the testator, and before the letters were issued, this ring was handed to William C. Blair by one of his grandsons at the testator's home, where his will was read. Plaintiff, after qualifying as executrix, endeavored to obtain its return or a receipt therefor, so that she might account for it. Finally, and on June 5, 1908, William C. Blair gave her the following, to wit:

"I hereby acknowledge receipt of a diamond ring and emerald stud and a silver watch and chain, which was left to my daughter, Dorothy M. Blair, according to the last will and testament of the late Daniel C. Blair.

"Yours, etc.,

"William C. Blair, Guardian and Parent of Dorothy M. Blair."

Clearly plaintiff alone was entitled to the possession of this ring for purposes of administration. No title to it could pass to the beneficiary until the ascertainment of the ability of the estate to pay its debts, for which the value of this ring might be liable. Certainly William C. Blair had no title to it, either individually or as natural guardian or parent of his daughter.

Respondent contends that before qualifying as executrix she saw the ring handed to William C. Blair, made no objection, and by taking the receipt ratified the delivery. She says, however, that she made no objection for the reason that, before qualifying, she had no authority to act, and that upon her qualification she believed it would be delivered to her by Mr. Blair, who subsequently told her he had lost it, and also that about August 18, 1909, he admitted he had pawned it. She also testified that she made endeavors to see Mr. Blair for the purpose of obtaining the ring, with the receipt as the only result. Whereupon she brought an action against Mr. Blair, and obtained judgment for $125. On these facts it can hardly be said that she, as executrix, ratified the delivery of the ring.

In no sense did William C. Blair have title to the property, on which defendant loaned the $65. Of course, he had its possession when the loan was made; but the right of a pawnbroker to advance upon jewels solely on that ground would apply to a gentleman who found them through the instrumentalities of a jimmy and a dark lantern. Comparatively slight investigation might have induced defendant not to make the loan. See Soltau v. Gerdau, 119 N. Y. 380, 23 N. E.

864, 16 Am. St. Rep. 843 where apparent ownership was much stronger than that at bar, where the court says:

"While mere possession of goods is frequently prima facie evidence of title, it is merely prima facie. Whoever deals with the possessor does it at his peril, and a purchaser from one having no other apparent title to goods than the possession thereof must see to it that his seller has the title; and if his title fails, and he is obliged to respond to the true owner of the goods, his loss is due to his own misplaced confidence and not to that of the owner. * * * Here the defendant could have inquired into the title of Smith before he took the rubber in pledge, and his loss is due, not to any wrong, neglect, or misplaced confidence of the plaintiff, but to his own neglect and abused confidence."

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GIEGERICH, J., concurs in the result.

LEHMAN, J. (dissenting). The plaintiff not only did not object to the giving of the ring to Blair before she qualified as executrix, but thereafter she took a receipt from him for the purpose of protecting herself as executrix. That act was consistent only with the theory that she ratified the prior delivery to Blair. Having delivered the ring to Blair, with the intention apparently of divesting herself of any rights to the ring, she cannot thereafter replevin the ring from one who in good faith has loaned money to Blair upon the strength of his apparent ownership.