[Civ. No. 179. First Appellate District.—March 1, 1906.]

## AKRON CEREAL COMPANY, Respondent, v. FIRST NATIONAL BANK OF SAN FRANCISCO, Appellant.

ACTION FOR CONVERSION—CONSTRUCTION OF CODE—PLEDGE BY AGENT—CONDITIONS OF PROTECTION OF PLEDGEE.—Though, by the terms of subdivision 2 of section 2368 of the Civil Code, a factor or mere agent, who is in possession of property with power to sell it, has no authority to transfer it by way of pledge, yet section 2991 of that code was enacted for the purpose of protecting a pledgee who deals with a possessor of the property on the faith that he is the owner, if the real owner has allowed the pledgor to assume the apparent ownership, and has done so for the purpose of making any transfer of it. The pledgee must show the existence of these conditions, as well as good faith, before he can claim a title superior to that of the owner.

ID.—EFFECT OF MERE POSSESSION—OWNERSHIP NOT AFFECTED—MISPLACED CONFIDENCE.—Mere possession of personal property is only mere *prima facie* evidence of ownership. The owner may place his property in the custody of a carrier, warehouseman or other bailee, without in any respect affecting his ownership. Whoever deals with the possessor does it at his peril; and the purchaser from one having no other apparent title than possession must see to it that the seller has the title; and if his title fails, and he is obliged to respond to the true owner of the goods, his loss is due to his misplaced confidence and not to that of the owner.

ID.—EFFECT OF WAREHOUSE RECEIPT.—A warehouse receipt, except as against the warehouseman, is no higher evidence of title than would be the physical possession of the property. A warehouse receipt presented by the pledgor to his pledgee is only *prima facie* evidence of ownership of the merchandise therein mentioned; and if the owner does not authorize, and is in no respect connected with, the issuance of such receipt, his rights as owner of the property will not be affected by it.

ID.—UNAUTHORIZED CHANGES IN WAREHOUSE RECEIPTS.—When, in the first instance, merchandise consigned to the order of the plaintiff was deposited in a warehouse in its name, at the instance of the representative of its factor, the latter had no authority to direct words to be added to the entry indicating that it was in his care, and the entry of such words created no right in him; nor had he authority to change the entry to the name of a firm as plaintiff's factor, nor to withdraw it by himself as their representative, for

the purpose of depositing the same in another warehouse in his own name, and obtaining a receipt which he might pledge to the defendant.

ID.—AUTHORITY OF FACTOR—POWER OF DELEGATION.—Whatever authority the firm constituting plaintiff's factor may have had in reference to goods shipped by plaintiff to its own order upon notice to such factor, was not conferred on a local representative, and could not be exercised by him nor delegated to him by such factor.

ID.—AUTHORITY OF REPRESENTATIVE.—The representative of such factor could receive the goods and place them in the warehouse for the plaintiff, but he had no authority, by virtue of such relation, to store them in his own name, either directly or indirectly.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Lloyd & Wood, for Appellant.

Louis S. Beedy, L. A. Gibbons, and Wm. M. Abbott, for Respondent.

HARRISON, P. J.—Action for conversion. Judgment was rendered in favor of the plaintiff, and the defendant has appealed.

The facts out of which the plaintiff's cause of action arose, as developed at the trial, are as follows: The plaintiff is a corporation organized under the laws of Ohio, and engaged in that state in the manufacture of an article of merchandise known as "Mother's Oats"; and on March 15, 1900, shipped by railroad from Akron to San Francisco three hundred and fifty cases of this merchandise. At that time, J. R. Moler & Co., a firm doing business in Denver, was acting as manufacturing agent for the plaintiff in several cities, and had one F. Ingold as its own agent and representative in San Francisco. The merchandise so shipped by the plaintiff was consigned to its own order, with a direction on the bill of lading "Notify J. R. Moler, 109 California street, San Francisco, Cal." Upon its arrival in San Francisco the merchandise was first stored in the warehouse of the Haslett Warehouse Co., and was entered on its books in the name of "The Akron

Cereal Co., c/o F. Ingold.'' October 20, 1900, at the request of Ingold, two hundred and ninety-two cases of the merchandise were transferred upon the books of the warehouse to the name of ''J. R. Moler & Co., c/o F. Ingold.'' No warehouse receipts were issued in either case. November 8th, one hundred and forty cases, and November 9th, one hundred and twenty-eight cases, were withdrawn from this warehouse by Ingold, he signing ''J. R. Moler & Co., per F. Ingold,'' to receipts therefor from the warehouse. Ingold was himself a manufacturing agent, and was also engaged in business in San Francisco upon his own account; and about this time he applied to the defendant for a loan of $500, offering two hundred and fifty cases of the above merchandise as collateral security therefor, stating that it belonged to him and was stored in a warehouse in the city in his name. Upon being told by the defendant that it would require a warehouse receipt therefor to be issued in its own favor, he shortly thereafter presented such a warehouse receipt from the Lowell warehouse, and received from the defendant $500, for which he gave his promissory note and the said warehouse receipt as security therefor. At the expiration of thirty days he paid the defendant $250 upon the account of this loan, and soon after left the country and was not again heard from. In April, 1901, the defendant sold the merchandise for $498. out of which, after deducting the expenses of the sale, it reimbursed itself for the loan and some other expenses, and has in its hands a small balance to the credit of Ingold. Upon these facts, the superior court held that the plaintiff was at all times the owner of the merchandise; that the defendant had converted it to its own use, and thereupon rendered judgment against the defendant for $498.

The appellant does not question the finding that the plaintiff was the owner of the merchandise, but it relies for its defense and in support of its appeal upon the provisions of section 2991, Civil Code. That section is as follows, viz.: ''One who has allowed another to assume the apparent ownership of property for the purpose of making any transfer of it cannot set up his own title to defeat a pledge of the property made by the other to a pledgee who received the property in good faith in the ordinary course of business and for

value." It may be conceded that the defendant received the property from Ingold in good faith and in the ordinary course of business, and for value; but in order that, by reason thereof, the plaintiff should be deprived of his right to the property, it was incumbent upon the defendant to show that Ingold had been "allowed" by the plaintiff to assume the apparent ownership thereof "for the purpose of making a transfer of it." Mere possession of property is only *prima facie* evidence of ownership. The owner may place his property in the name or custody of another, as in the case of a carrier or warehouseman or other bailee, without in any respect affecting his ownership. A warehouse receipt, except as against the warehouseman, is no higher evidence of ownership than would be the physical possession of the property. "While mere possession of goods is frequently *prima facie* evidence of title, it is merely *prima facie*. Whoever deals with the possessor does it at his peril, and the purchaser from one having no other apparent title to goods than the possession thereof must see to it that his seller has the title; and if his title fails, and he is obliged to respond to the true owner of the goods his loss is due to his own misplaced confidence, and not to that of the owner. Owners of goods for commercial and other purposes must frequently intrust others with the possession of them, and the affairs of men could not be conducted unless they could do so with safety. So long as the possession of the goods is not accompanied with some indicia of ownership, or of right to sell, the possessor has no more power to devest the owner of his title or to affect it than a mere thief." (*Soltau* v. *Gerdau*, 119 N. Y. 380, [16 Am. St. Rep. 843, 23 N. E. 864].) A factor or a mere agent who is in possession of property with power to sell the same has authority to transfer it by way of pledge (Civ. Code, sec. 2368 [2]); but for the purpose of protecting a pledgee who deals with one who is in possession of property, and takes it from him in pledge under the belief that he is the owner thereof, the legislature has enacted the above section of the code; but by the express terms of the section it has limited the grounds of such belief on the part of the pledgee to cases in which the real owner of the property has not only "allowed" the pledgor to assume its apparent ownership, but has done so

"for the purpose of making any transfer" of it. The pledgee must show the existence of these conditions as well as good faith on his part before he can claim a title superior to that of the original owner. "It is the act of the owner in intrusting the factor with the possession of the goods, or the documentary evidence of ownership—the apparent ownership and right of disposal—in connection with the fact that innocent third persons deal with him upon the faith of such apparent ownership, that estops the owner from following his property into the hands of *bona fide* vendees or pledgees, and gives the latter a better title than their vendor or pledgor had." (*Howland* v. *Woodruff*, 60 N. Y. 73.)

The warehouse receipt which Ingold presented to defendant was only *prima facie* evidence of the ownership of the merchandise therein mentioned, and, as the plaintiff did not authorize, and was in no respect connected with, the issuance of this receipt, its rights as owner of the property could not be affected by it. As between the plaintiff and Ingold it is clearly shown by the record not only that the former had never parted with its ownership of the property, but also that the apparent ownership thereof by Ingold had never been authorized or allowed by the plaintiff, but had been assumed by Ingold without any authority whatever, and with the purpose of defrauding the plaintiff. When the plaintiff shipped the property from Ohio it consigned it to its own order, and on its arrival in San Francisco it was deposited in the Haslett warehouse and entered upon the books of the warehouse in its name; and it may be assumed that such deposit and entry were made at the instance of Ingold. The addition of the words "c/o F. Ingold" to this entry was, however, not made under any authority from the plaintiff, and did not create any right in Ingold. Neither did the fact that he was the agent of Moler & Co., the plaintiff's factor, authorize him to direct such entry to be made by the warehouse company. The subsequent transfer of the property at his direction upon the books of the warehouse to J. R. Moler & Co. was equally unauthorized, and was evidently made for the purpose of facilitating his subsequent withdrawal of the merchandise and in contemplation of obtaining a warehouse receipt therefor in his own name which he might pledge to the defendant. His apparent ownership of the

property is limited by its source, and the rights of the defendant to the property as against the plaintiff are limited in the same manner. This apparent ownership was first manifested when he withdrew the goods from the Haslett warehouse and deposited them in the Lowell warehouse, and caused to be issued in his own name the warehouse receipt which he gave as security to the defendant. Whether he accomplished his fraud by a single stroke or by successive steps—whether his apparent ownership be regarded as brought into existence when the warehouse receipt was issued in his name, or as having been planned by him when the merchandise first arrived in San Francisco and held in a state of incubation until then, is immaterial. Whatever he did in the matter was done of his own volition, without any authority or knowledge on the part of the plaintiff.

Neither can it be held that he was authorized to assume the possession and control of the property by virtue of his relation to Moler & Co. His relation to that firm is not very clearly shown in the record, other than that he was its representative. It does not appear that the firm had any occasion to be represented by him other than in this particular transaction, but it does appear that Ingold was engaged in an independent business and in buying and selling merchandise upon his own account. Whatever authority Moler & Co. had as the plaintiff's factor in reference to the goods in question was not conferred on Ingold, and could not be exercised by him, nor could Moler & Co. delegate their authority to him. (Civ. Code, sec. 2368 [3].) As their representative he could receive the goods and place them in the warehouse for the plaintiff, but he had no authority, by virtue of such relation, to store them in his own name, either directly or indirectly. In support of these principles we refer to *Wilson* v. *Nason,* 4 Bosw. (N. Y.) 155; *Howland* v. *Woodruff,* 60 N. Y. 73; *Soltau* v. *Gerdau,* 119 N. Y. 380, [16 Am. St. Rep. 843, 23 N. E. 864]; *Collins* v. *Ralli,* 20 Hun, 246.

As the defendant failed to show that Ingold's apparent ownership of the merchandise was in any respect authorized or contributed to by any act or conduct of the plaintiff, it is not entitled to the protection given by the above section of the code.

The judgment and order denying a new trial are affirmed.

Cooper, J., and Hall, J., concurred.