[Civ. No. 2217.   Second Appellate District.—April 14, 1917.]

## FAIRMONT CREAMERY COMPANY (a Corporation), Respondent, v. LOS ANGELES ICE & COLD STORAGE COMPANY (a Corporation), Appellant.

PLEDGE—CONSIGNMENT OF GOODS TO FACTOR—TRANSFER TO PURCHASERS —APPARENT OWNERSHIP OF PROPERTY.—Under section 2991 of the Civil Code, which provides that one who has allowed another to assume the apparent ownership of property for the purpose of making a transfer of it, cannot set up his own title, to defeat a pledge of the property, made by the other, to a pledgee who received the property in good faith, in the ordinary course of business, and for value, a factor to whom is consigned a carload of eggs, receives the property for the purpose of making a transfer, notwithstanding that customers have been obtained therefor prior to the consignment.

ID.—PLEDGE OF CONSIGNMENT — EXAMINATION OF BILL OF LADING BY PLEDGEE—UNNECESSARY REQUIREMENT.—Where such a consignment is pledged by the factor as security for the repayment of a loan of money, it is not necessary in order to entitle the pledgee to hold the goods as against the real owner, that the pledgee should have examined the bill of lading.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

Sidney J. Parsons, and Horace Wilson, for Appellant.

Henry K. Norton, and Wilbur Bassett, for Respondent.

CONREY, P. J.—Action for conversion.   Judgment was rendered in favor of the plaintiff and the defendant has appealed from the judgment.

As shown by the evidence, it appears that on the seventeenth day of June, 1913, one Fred F. Lambourn was engaged in business at Los Angeles as a broker selling merchandise on behalf of consignors, and also as a dealer in merchandise on his own account.   He had been in business for several years, and so continued until the fourth day of August, 1913, when he was adjudged bankrupt.   The plaintiff was engaged in the produce business at Omaha, Nebraska, and had been doing business with Lambourn as broker since April, 1911.

On June 5, 1913, Lambourn telegraphed to plaintiff that he had sold a car of eggs.  The telegram was as follows: ''Sold car candled current receipts fifty-three and over small dealers eighteen cents track.  Wire car number and when can ship.''  On June 7, 1913, the plaintiff shipped the carload of eggs thus ordered and made the consignment directly to and in the name of Lambourn.  The car arrived at Los Angeles on June 17th.

When the merchandise was shipped from Omaha a bill of lading therefor, showing the shipment from plaintiff to Lambourn, was received by plaintiff from the railroad company and was mailed by the plaintiff to Lambourn.  According to the testimony of plaintiff's sales manager, this was done that Lambourn ''might obtain possession of the eggs for the purpose of making delivery to the various parties to whom he had made sale as our broker.''  At the same time the plaintiff forwarded, through the Omaha National Bank to that bank's correspondent in Los Angeles, a draft on Lambourn directing him to pay to the order of the Omaha National Bank the sum of $2,160 ''and charge to account of this company.''  The draft was not paid.

On June 17, 1913, Lambourn informed the superintendent of the defendant that he had a car of eggs and wanted a loan on it.  The eggs were taken into possession of defendant and placed in its warehouse, and defendant issued to Lambourn a warehouse receipt therefor.  Thereupon, and on the same day, the defendant loaned to Lambourn the sum of two thousand three hundred dollars, taking his note for that sum, together with an agreement pledging and depositing with the defendant said carload of eggs as collateral security for the payment of that or any other liability or liabilities of Lambourn to the defendant, ''due or to become due or that may be hereafter contracted.''  At all times mentioned in this opinion Lambourn was indebted to the defendant in an aggregate amount much exceeding the value of the property claimed by the plaintiff in this action.  The evidence does not show when this indebtedness, other than the two thousand three hundred dollar loan, was incurred, except that defendant had been making loans to Lambourn for about two years, and on August 4, 1913, he owed it ninety thousand dollars.  In making that loan of June 17th the defendant made no special inquiry as to ownership of the merchandise, and

did not see or ask to see the bill of lading. It simply accepted Lambourn's statement that he had the car there and the fact that it was there.

The defendant did not at the time of making the loan and receiving the pledge, have any knowledge concerning the ownership of the property other than that it was in possession and control of Lambourn, as above stated. On September 10, 1913, the defendant sold said lot of eggs and received therefor the sum of $2,880. On September 24, 1913, the plaintiff made written demand upon the defendant, stating therein that the plaintiff "is the sole owner" of said property stored with defendant in the name of Fred F. Lambourn, and demanded immediate delivery thereof and offered "to pay all reasonable charges upon said eggs upon delivery of same."

The first and principal question presented here arises under appellant's claim that the evidence is insufficient to support the finding that the plaintiff was the owner and entitled to the possession of the goods at and after the time of the transactions which took place between the defendant and Lambourn on the seventeenth day of June. Appellant relies upon certain sections of the Civil Code. "A factor has ostensible authority to deal with the property of his principal as his own, in transactions with persons not having notice of the actual ownership." (Civ. Code, sec. 2369.) It appears that Lambourn was a factor within the definition stated in Civil Code, section 2026, which says: "A factor is an agent who, in the pursuit of an independent calling, is employed by another to sell property for him, and is vested by the latter with the possession or control of the property, or authorized to receive payment therefor from the purchaser." "One who has allowed another to assume the apparent ownership of property for the purpose of making any transfer of it, cannot set up his own title, to defeat a pledge of the property, made by the other, to a pledgee who received the property in good faith, in the ordinary course of business, and for value." (Civ. Code, sec. 2991.)

Replying to the contention of appellant under these provisions of the statute, and especially under section 2991 of the Civil Code, counsel for respondent first argue that upon the facts shown Lambourn did not have apparent ownership of the property; that he did not receive the goods "for the pur-

pose of making any transfer,'' since the goods when shipped had already been sold and were consigned to Lambourn purely as a bailee to make delivery. We do not agree that his authority was thus limited. It may be that the property had been sold in the sense that there were purchasers to whom the goods were intended to be distributed by Lambourn, but there remained to be done by him the acts which would transfer the eggs to those purchasers. In the meantime they could not be identified as belonging to any purchaser, and the property remained in possession of Lambourn for the purpose of making those transfers.

Counsel for respondent further suggests the fact that the defendant did not inquire of Lambourn as to the form of the bill of lading, and never saw that document until the day of the trial. Therefore, they say that as to them Lambourn had mere possession, and that appellant cannot in any sense be said to be a pledgee who received the property in good faith in the ordinary course of business. We think that it was not necessary for appellant to examine the bill of lading. By acting upon the assumption that Lambourn had such bill of lading and without examining the same for itself, appellant took the risk that he might not have any such document in his possession. But since he did have it, the case is the same as if appellant had examined it and relied upon the evidence obtained by its own inspection.

Respondent's counsel refer us to *Akron Cereal Co.* v. *First National Bank*, 3 Cal. App. 198, [84 Pac. 778], where the provisions of section 2991 were considered. That case, like the case at bar, was an action for conversion of goods which had been forwarded to a point where they were to be sold or distributed. But the facts were essentially different from the present case, since, among other things, it appeared that the merchandise had been shipped by the plaintiff to its own order, and the terms of the bill of lading had not been such as to vest apparent ownership in the agent. The court there said that, in order that by reason of the pledge made to the defendant the plaintiff should be deprived of his right to the property, it was incumbent upon the defendant to show that the pledgor had been allowed by the plaintiff to assume the apparent ownership thereof for the purpose of making a transfer of it. ''The pledgee must show the existence of these conditions as well as good faith on his part before he

can claim a title superior to that of the original owner.''
Referring to the person in possession who made the pledge
of the property, it was said: ''His apparent ownership of the
property is limited by its source, and the rights of the de-
fendant to the property as against the plaintiff are limited
in the same manner.'' Admitting the full force of these prin-
ciples, nevertheless we think that the defendant has shown
that Lambourn's apparent ownership of the merchandise at
the time when he attempted to pledge it to the defendant, was
caused by the conduct of the plaintiff in consigning it to
Lambourn for the purpose of transferring it to purchasers,
and defendant is entitled to the protection given by section
2991 of the Civil Code.

The court determined that the value of the goods was
$3,120. The pledge was good as against the plaintiff's claim,
for the amount of the debt created by the two thousand three
hundred dollar loan, and for any additional advances made
thereafter by the defendant to Lambourn. It was not, as
against the plaintiff, valid as security for indebtedness exist-
ing prior to June 17, 1913, since as to such indebtedness it
was not a pledge made ''for value.''

The judgment is reversed.

James, J., and Shaw, J., concurred.