[Civ. No. 3354. First Appellate District, Division Two.—April 13, 1920.]

FAIRMONT CREAMERY COMPANY (a Corporation), Appellant, v. LOS ANGELES ICE & COLD STORAGE COMPANY (a Corporation), Respondent.

[1] PLEDGE — CONSIGNMENT OF GOODS TO FACTOR — RIGHTS OF BONA FIDE PLEDGEE FOR VALUE.—Where goods are consigned directly to a factor, the bill of lading designating him as the consignee, and upon the arrival of the goods and his securing possession of them they are pledged to one who receives them in good faith, in the ordinary course of business, and for value, the real owner cannot set up his title to defeat such pledge, notwithstanding the factor obtained possession of the goods from the carrier without showing a bill of lading and going through the usual course of business and the pledgee did not call for the bill of lading or some indicia of ownership in taking the goods as a pledge, but accepted the factor's statement that he was the owner.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry K. Norton and Roy V. Rhodes for Appellant.

Sidney J. Parsons for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against it rendered in an action for conver-

sion of a carload of eggs. When the action was first tried judgment was rendered for the plaintiff, from which judgment the defendant appealed. Upon the appeal the judgment was reversed. The decision upon the first appeal is reported in volume 33 Cal. App. 414, [165 Pac. 553]. The case was then retried, resulting in a judgment for the defendant, from which judgment this appeal is prosecuted.

The important facts, as stated on the first appeal, also appear from the present record and are as follows:

On June 17, 1913, one Fred F. Lambourn was engaged in business at Los Angeles as a broker selling merchandise on behalf of consignees and also as a dealer in merchandise on his own account. He had been in business for several years. In August, 1913, he was adjudged a bankrupt. The plaintiff was engaged in the produce business at Omaha, Nebraska, and had been doing business with Lambourn as a broker since April, 1911. On June 5, 1913, Lambourn telegraphed plaintiff that he had sold a car of eggs. The telegram was as follows: "Sold car candled current receipts fifty-three and over small dealers eighteen cents track. Wire car number and when can ship." On June 7, 1913, the plaintiff shipped the carload of eggs thus ordered and made the consignment directly to and in the name of Lambourn. The car arrived at Los Angeles on June 17, 1913. When the merchandise was shipped from Omaha a bill of lading therefor, showing the shipment from plaintiff to Lambourn, was received from the railroad company, and was mailed by the plaintiff to Lambourn. According to the testimony of plaintiff's sales manager this was done that Lambourn "might obtain possession of the eggs for the purpose of making delivery to the various parties to whom he had sold as our broker." At the same time the plaintiff forwarded through the Omaha National Bank to that bank's correspondent in Los Angeles a draft on Lambourn for $2,160, the purchase price of the eggs. The draft was not paid. On June 17, 1913, Lambourn informed the superintendent of the defendant that he had a car of eggs and wanted a loan upon it. The eggs were taken into the possession of the defendant and placed in its warehouse, and defendant issued to Lambourn a warehouse receipt therefor. Thereupon, on the same day, the defendant loaned to Lambourn two thousand three hundred dollars, taking his note

therefor, together with an agreement pledging the car of eggs to the defendant as collateral security for the payment of the note and any other liability or liabilities of Lambourn to the defendant, "due or to become due or that may be hereafter contracted." In making this loan the defendant made no special inquiry as to the ownership of the merchandise and did not see or ask to see the bill of lading. It simply accepted Lambourn's statement that he owned the car of eggs. It had no knowledge concerning the ownership of the property. On September 10, 1913 (after the bankruptcy of Lambourn), the defendant sold the eggs for $2,880. On September 24, 1913, the plaintiff made a demand for the same upon the defendant, claiming to be the sole owner, and offered to pay storage charges on the eggs. Upon these facts (the statement of which is taken from the opinion rendered upon the first appeal), all of which also appear clearly from the record now before us, the district court of appeal for the second appellate district, on April 14, 1917, decided that Lambourn was a factor, and as such had ostensible authority to deal with the goods of the principal as with his own in transactions with persons not having notice of the actual ownership. (Civ. Code, secs. 2026, 2369.) The appellate court also decided that section 2991 of the Civil Code was applicable to the facts shown; that the eggs were consigned to Lambourn to be transferred by him to the purchaser of the same; and that "in the meantime they could not be identified as belonging to any purchaser, and the property remained in possession of Lambourn for the purpose of making those transfers." The opinion upon the first appeal continues further: "Counsel for respondent further suggests the fact that the defendant did not inquire of Lambourn as to the form of the bill of lading, and never saw that document until the day of the trial. Therefore, they say, that as to them Lambourn had mere possession, and that appellant cannot in any sense be said to be a pledgee who received the property in good faith in the ordinary course of business. We think that it was not necessary for appellant to examine the bill of lading. By acting upon the assumption that Lambourn had such bill of lading and without examining the same for itself, appellant took the risk that he might not have any such document in his possession. But since he did have it, the

case is the same as if appellant had examined it and relied upon the evidence obtained by its own inspection.''

[1] In so far as the facts are substantially the same upon the second appeal as upon the first appeal, the decision upon the first appeal is the law of this case. However, appellant urges upon our attention two additional points in the evidence upon the second trial. It states them to be:

''1. That Lambourn had a bond up with the railroad company so that he might obtain cars without showing a bill of lading and going through the usual course of business.

''2. Lamoreaux, superintendent of cold storage for the defendant, testified that the board of directors of the L. A. Ice & Cold Storage Company had adopted a policy of transacting business, such as was done in this case with Lambourn, with only regular customers and not with strangers. And further he testified to the effect that the reason that they did not call for the bill of lading or some indicia of ownership in taking these goods as pledge for the loan, was because they relied upon the fact that they were dealing with an old customer.''

It is contended that as the bill of lading was not made ''to order'' and was not negotiable, therefore, this fact would have put the defendant upon notice if it had examined the same. We find no merit in this contention. The plaintiff consigned the goods directly to Lambourn and the bill of lading designated him as the consignee. It is true that as between the defendant and Lambourn, this bill of lading transferred only the right to the possession of the goods and not the full title, but it is this very possession for the purpose of transferring title to others which is the basis of the pledgee's rights under section 2991 of the Civil Code. It is true that because the bill was non-negotiable Lambourn was obliged to wait until he secured possession of the goods before pledging them. If the bill had been negotiable, he could have dealt with it before the goods arrived and cut off all equities, but he did not attempt to do this. He did not negotiate the bill. He waited until the goods arrived and properly secured possession of them, because the eggs were billed to him. If the defendant had examined the bill of lading, it would have discovered nothing which would have militated against its rights under section 2991 of the Civil Code. The bill of lading merely showed that

Lambourn was entitled to the possession of the eggs. The limited purpose of the possession did not appear from the bill of lading, and was enforceable only as between the plaintiff and Lambourn, or parties having knowledge of the facts. The plaintiff could have protected itself fully by attaching the bill of lading to the draft which it sent to the bank for collection. It did not choose to do this.

The matter of the effect of the non-negotiability of the bill of lading is argued by appellant in several connections, but the discussion herein disposes of the matter in its various applications. The other matter urged by the appellant we consider to be without merit.

The judgment is affirmed.

Brittain, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 10, 1920.

All the Justices concurred.