[Civ. No. 140. Fourth Appellate District.—September 11, 1930.]

SCHUMANN–HEINK AND COMPANY, INC. (a Corporation), Appellant, v. UNITED STATES NATIONAL BANK (a Corporation), Respondent.

Curtis Hillyer and Irve C. Boldman for Appellant.

James G. Pfanstiel for Respondent.

HAINES, J., *pro tem.*—This is a civil action growing out of the same state of facts involved in *People* v. *Schumann-Heink,* 98 Cal. App. 225 [276 Pac. 625], and in *People* v. *Schumann-Heink,* 106 Cal. App. 81 [288 Pac. 838]. Appellant Schumann-Heink and Co., Inc., was a corporation engaged in buying and selling securities and general brokerage. Henry Schumann-Heink was its president, spending his time largely in and out of its Los Angeles office. One Clare was its secretary and treasurer and in charge of its San Diego office. Schumann-Heink and

Clare were both directors. Pursuant to a discussion between Schumann-Heink and Clare appellant corporation bought in June, 1927, six shares and in July, 1927, six more shares in a pool known as the Security Bank Stockholders Association. Two certificates of such pool were issued for the shares bought, each running to Clare and each certifying that he was the beneficial owner of six shares of the capital stock of the Security Commercial and Savings Bank of San Diego. The purchase was made in the regular course of appellant's business and with appellant's funds. When appellant bought stock its custom was to have the same issued in the name of some one of its officers or employees for convenience of retransfer. It was not the practice for the board of directors to make special authorization of each purchase. The certificates here involved were issued and delivered to Clare, indorsed by him in blank and left with one Nelson, cashier of appellant's San Diego office. Henry Schumann-Heink, before this stock was bought, owed respondent United States National Bank $3,000 on two personal notes which were on June 21, 1927, consolidated into one. This note was unsecured. Clare had been introduced to respondent bank by Schumann-Heink and respondent's cashier, one Wilson, interviewed him about obtaining payment of Schumann-Heink's note or security for the same, suggesting that respondent was about to sue on the note. Clare, telling Wilson that such action would injure the business reputation of appellant corporation and imperil his, Clare's position with it and his chance of recovering money which it owed him, offered personally to guarantee payment of the note, reduce it by a thousand dollars and deposit as collateral for the rest such specified securities which, according to Wilson's testimony, he claimed personally to own, as Wilson should select. Wilson selected the two certificates referred to, evidencing ownership of the twelve shares of stock in the Security Commercial and Savings Bank of San Diego, and a certain Buenos Aires bond. Accordingly, on or about August 27, 1927, Clare turned in to respondent the said two certificates evidencing ownership of said bank stock, to be held as collateral for the note, but never did made the thousand dollar payment thereon, nor deposit the Buenos Aires bond. According to Clare's testimony, prior to the time the cer-

tificates were left with respondent bank, he had been instructed in a telephone conversation by Schumann-Heink, then in Los Angeles, to make such deposit as collateral for the note. Some days prior to the time this deposit was made Schumann-Heink had gotten the two certificates from the safe or had Nelson get them for him, at the San Diego office and taken them to Los Angeles to be there sold or used as collateral, presumably in the business of appellant corporation, and in the telephone conversation referred to had told Clare that he would send them down for pledging. They were accordingly received at San Diego either by Clare in person or received by Nelson, the local cashier and handed to Clare, and thus became available for deposit by Clare with respondent. Clare testified that at the time the stock was deposited with the bank no mention was made as to who owned it. According to Wilson, as we have seen, Clare had represented that he owned it himself. According to Wilson's testimony the bank had no intimation of any sort that anyone other than Clare owned it or had any interest in it, and accepted it as security in the belief that it was Clare's property. In January of 1928, Wilson was called on to testify at a grand jury investigation of the transaction, which resulted in certain criminal prosecutions. The note and pledged stock were carried by the bank until May, 1928, when, according to the evidence, Mr. Russell, president of respondent bank, called Schumann-Heink to come in and discuss the settlement of his note. Russell testifies that Schumann-Heink came in and after discussing the note and security, asked the bank to sell the stock and apply the proceeds on the note. According to Russell the question of price was discussed and Schumann-Heink talked over the telephone to someone, after which he told Russell that the stock was worth $200 per share and asked that that much be obtained. Thereupon, on May 17, 1928, the stock was sold by respondent bank for $197.50 per share, amounting in all to $2,370, in addition to which the bank received $30 on account of an accrued dividend. The proceeds of this sale were applied on Schumann-Heink's note, on which, however, considerable interest had accrued, so that after their application a balance remained due of $787.90. Of this, respondent bank notified Schumann-Heink by letter, and he came in and signed a renewal note

228

for that amount. The present action is brought by appellant Schumann-Heink and Co., Inc., to recover damages for conversion of the stock. The findings and judgment of the trial court were in favor of the United States National Bank, defendant and respondent, and from such judgment this appeal is prosecuted.

Objections are made to portions of the findings. The court found:

"That it is not true that said stock was deposited by said Wilfred M. Clare without the knowledge or consent of the plaintiff, but it is true that said stock was deposited with defendant with the full knowledge and consent of the president and secretary-treasurer of plaintiff." The sentence quoted is merely the last in a long finding detailing the circumstances of the pledge. The court on the evidence before it could not have found otherwise than that both Schumann-Heink, the president, and Clare, the secretary-treasurer, consented to the pledge, that Clare, making himself, necessarily knew of it at the very time it was being made, and that Schumann-Heink knew it was about to be made and directed that it be made. Appellant says, however, that since in the act of pledging it, both Schumann-Heink and Clare violated their duties as corporate officers and acted in their own interests alone, their knowledge of what was done is not to be imputed to the corporation (citing *McDonald* v. *Randall*, 139 Cal. 246 [72 Pac. 997], and *Palo Alto Mutual Bldg. & Loan Assn.* v. *First Nat. Bank*, 33 Cal. App. 214, 224 [164 Pac. 1124]). Whether that rule, usually applicable when an officer is dealing with the corporation in his own behalf, applies in the present case seems to us, however, a useless inquiry, since respondent's contentions are based not primarily on the corporation's *knowledge* of what Schumann-Heink and Clare actually did, but on the circumstance rather that it placed them in the position to do what they did do.

Appellant objects to a finding that respondent did not convert the stock in question to its own use, and claims that this finding is but a conclusion of law (citing *Niles* v. *Edwards*, 90 Cal. 10 [27 Pac. 159], and *Ions* v. *Harbison*, 112 Cal. 260 [44 Pac. 572]). Actually it was made in response to an allegation in terms of the conversion in the complaint and a denial of the same in the answer. Doubt-

less the finding is to some extent a conclusion and would have to yield ʼwere there more specific findings of fact inconsistent with it. If it be regarded as a conclusion of law, then, whether it is justifiable or not depends on whether there are other findings that are supported by the evidence sufficient to sustain it, so that its correctness can only be ascertained by an examination of the case as a whole. In other words, if respondent was justified in doing what it did do, the conclusion is right, and if it was not justified in so doing, the conclusion is wrong.

Objection is also made to a finding that appellant authorized and permitted Schumann-Heink and Clare to have access to its safe, and that it is estopped from here contending that the stock was wrongfully pledged with respondent or converted by it and is estopped from claiming damages for such conversion. These determinations, which are, in the objection, coupled together, are, again, only part of a long finding which undertakes to summarize, as a basis for declaring the estoppel, the relation of Schumann-Heink and Clare to the corporation, that the former exercised general supervision and management of its affairs, and the latter was its manager in San Diego, and by implication, the virtual dictation between them of what was, during the time involved, done at its San Diego office, and the practice of the corporation of permitting its officers to carry its securities in their own names. So far as the access to the safe is involved, the finding is sufficiently supported by the evidence, for not only does that show that Schumann-Heink was enabled to get the stock to take with him to Los Angeles, but it shows, as we saw, that so far as the San Diego office, which must include the safe therein located, was concerned, Clare was in charge, and, therefore, controlled what was done by the two or three employees, that is the cashier and the stenographer, who, with himself, made up the office force there. What, however, is principally objected to in this finding, is the determination that appellant is estopped to raise the contentions on which it relies, a matter which, again, can only be determined on a consideration of the whole case.

So far as respondent bank's *bona fides* in receiving the pledge is concerned, there is sufficient evidence in the record

to support the court's findings on the subject and indeed on that portion of the findings there is no attack.

In our view, when what is really incidental is eliminated, there are two questions and only two to be here decided, first whether, taking the case as a whole, appellant's conduct has been such as to subordinate its rights in the stock to those of a *bona fide* pledgee in the ordinary course of business, without notice of its claims, and for value; and second, whether respondent was such a holder for value.

It is, of course, the rule, with certain exceptions that do not here concern us, that a mere thief can pass no title to that which he has stolen. The same thing is not necessarily true where he who wrongfully undertakes to deal with property has been, by the act or neglect of the true owner, clothed with the *indicia* of ownership. The law is, generally, that "when one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened must be the sufferer." (Civ. Code, sec. 3543.) In *National Safe Deposit & Trust Co.* v. *Hibbs*, 229 U. S. 391 [57 L. Ed. 1241, 33 Sup. Ct. Rep. 818], it was said:

"The qualification of the rule, as not applying when the instrument is stolen, is not based upon the name of the agent's crime, but upon the fact that, in the ordinary and typical case of theft, the owner has not intrusted the agent with the document, and therefore is not considered to have done enough to be estopped as against a purchaser in good faith. He certainly has not done enough if the estoppel is based upon the principle that, when one of two innocent persons is to suffer, the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. But in the case like the present the agent has been intrusted with the converted property, and it is totally immaterial whether, by a stretch which extends largely beyond the true field of trespass, his wrong has been brought within the criminal law or not. The ground of the estoppel is present, and the estoppel arises. The distinction is not new. On the one side are cases like *Knox* v. *Eden Musee American Co.*, 148 N. Y. 441 [51 Am. St. Rep. 700, 31 L. R. A. 779, 42 N. E. 988], where an *agent simply had access* to a document remaining in the possession of the owner; in the other cases like *Pennsylvania R. Co.'s Appeal*, 86 Pa. 80, where possession is *intrusted* to the

agent for one purpose and he uses it for another. It cannot matter in the latter class that the agent intended the fraud from the outset.''

This language was quoted and approved in *Kohn* v. *Sacramento Elec. Gas & Ry. Co.*, 168 Cal. 1, 10, 11 [141 Pac. 626]. Appellant directs our attention to a line of authorities to the general effect, that since a corporation can only act through its officers and agents and must, to transact business at all, give to all or some of them access to its securities, therefore that its conduct in merely allowing them to handle the same does not amount to negligence and will not therefore estop the corporation to pursue the securities in the hands of a pledgee. (*Kohn* v. *Sacramento Elec. Gas & Ry. Co., supra; The Yamato* v. *Bank of Southern Cal.*, 170 Cal. 351 [149 Pac. 826] ; *Crocker Nat. Bank* v. *Byrne*, 178 Cal. 329 [173 Pac. 752].) Each of the three cases last mentioned involved officers or agents of the corporation who had access to the securities involved but no right to deal with them even on account of the principal. There is, indeed, language in the Yamato case, *supra* (p. 354), indicating that the ground on which the recipient of the property wrongfully disposed of by such officer or agent of the corporation was not, there, as a *bona fide* holder for value, allowed to withhold it from the true owner, was that such recipient, in dealing with the agent, was not relying on the character with which the principal had clothed him, as agent for the latter, but only dealing with the agent in his individual capacity. While that test, however, is applicable where the defense is that the pledgee relied on the pledgor's representative capacity, in which case he must, of course, prove that he did so rely, plainly there are cases where reliance on such representative capacity is not the gist of the pledgee's position at all, and not essential to maintaining it. ■ Where the *bona fide* recipient of the property, in due course, and for value, grounds his claim to retain it, not on the apparent representation by the agent of the true owner, but rather claims estoppel of the latter to insist on his ownership because he has entrusted the property to the agent to enable the agent to deal with it for him, and thereby placed the agent in a position to deceive third persons as to its ownership, then, on proof of that, he has made out his case, regardless of whether he

has known anything about the relation of the principal to the transaction or not. For example in *Wenban Estate Inc.* v. *Hewlett*, 193 Cal. 675, 700 [227 Pac. 723, 733], quoted and relied on by appellant, the court said:

"Hewlett had not only actual' possession of the bonds, but had actual authority to dispose of them. It is the fact of actual authority and not the knowledge of the fact on the part of the pledgees and transferees which is the controlling factor." (Citing *Fairmont Creamery Co.* v. *Los Angeles Ice & Cold Storage Co.*, 33 Cal. App. 414 [165 Pac. 553].)

Indeed, it frequently happens that an estoppel arises, though the recipient of the property pledged or disposed of by the wrongdoing agent had no knowledge of the principal's existence. The very point in many of the cases is that the agent has been clothed with the *indicia* of ownership and thereby enabled to deceive the public by causing it to believe him the only one interested. (*Arnold* v. *Johnson*, 66 Cal. 402 [5 Pac. 796].) But there is another element involved. ■ To raise the estoppel the agent must not only have been invested with the *indicia* of ownership but, where the person claiming as a *bona fide* holder is the agent's pledgee, it must also appear that the agent was allowed to assume the apparent ownership of the property for the *purpose of making a transfer of it.* (Civ. Code, sec. 2991; *Akron Cereal Co.* v. *First Nat. Bank,* 3 Cal. App. 198 [84 Pac. 778].) There is no dispute here that appellant's practice was to permit its officers to carry its securities in their own names nor that the purpose of the practice was to facilitate the transfer of such securities. ■ Where one or more executive officers of a corporation virtually control its action, the principle that what an agent does for himself and not the corporation is not the act of the corporation is, as applied to the conduct of such officers, not strictly applicable. (*Northwestern P. C. Co.* v. *Altantic P. C. Co.*, 174 Cal. 308 [163 Pac. 47].) As is well illustrated by that case the time eventually arrives when the acts of such officers, whether in violation of their duties or not, become the acts of the corporation. To the point that a corporation may be estopped to repudiate the acts of those practically entrusted with it is *Lynch* v. *International B. Co.*, 68 Cal. App. 432 [229 Pac. 968]. It is not, of course,

claimed in the case at bar that the officers in question were the only persons beneficially interested in the corporation. Neither was any such claim made in the Lynch case. The evidence in the case before us of the extent to which Schumann-Heink and Clare were allowed a free hand, may not be as detailed or conclusive as was the evidence of the powers left to the executive officers concerned in the Lynch case, yet it is pretty circumstantial to the effect that appellant's board of directors functioned little in the day to day management of its affairs. Clare was a director and secretary of appellant corporation but says that he does not believe the board held any meeting between June 21, 1927, and August of that year nor do the minutes of any such meeting appear in evidence. There is, indeed, in the evidence an extract from the minutes showing that meetings were held on July 14th, and October 14th, respectively of the previous year, but it seems patent that in the part of 1927 with which we are concerned, at least, they were not held with any frequency to pass on the details of the company's transactions. Under the by-laws the president had "subject to the advice of the directors, direction of the affairs of the corporation." Since the purchase and sale of securities was an essential part of appellant's business, and we know that they were, as a practice, bought without specific action on the part of the board of directors, it is a fair inference that they were also sold as a matter of practice, without its specific action. ■ We do not think that the trial court went beyond legitimate inferences from the evidence in concluding, as it must have done, that the relation of Schumann-Heink and Clare to the business was such that appellant had in effect allowed them to assume the apparent ownership of securities for the purpose of transferring them, and in the particular instance of the securities here involved that Clare's status comes within that category. "Findings of ultimate facts are binding upon appeal, not only when there is a direct conflict regarding the probative facts, but when these facts are fairly susceptible to opposing inferences." (*Northwestern P. C. Co.* v. *Atlantic P. C. Co., supra.*)

■ There remains only the question whether respondent can be said to have become a holder for value. Appellant has directed our attention to *Fairmont C. Co.* v. *Los Angeles etc.*

*Co., supra,* where the court, in holding one to whom an agent entrusted with property for the purposes of transfer had wrongfully pledged it, entitled to retain the pledge as against the owner, held the pledge valid only as security for advances made at the time of the transaction or thereafter, saying as to a pre-existing indebtedness which the pledge also purported to cover, that as to this it was not a pledge "for value". We are unable to take that view of the matter, in consequence of section 3106 of the Civil Code and of the expressions of the Supreme Court on the subject as illustrated by the following language from *Smitton* v. *McCullough,* 182 Cal. 530, 537, 538 [189 Pac. 686, 689] :

"The law in this state on this question is well settled to the effect that not only does an antecedent indebtedness constitute a valuable consideration for a transfer in satisfaction and discharge of said indebtedness, but it is also a valuable consideration, within the protection of the equitable doctrine of *bona fide* purchase, for a transfer merely as security for a pre-existing debt. (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 749.) The earliest cases in this state held that an antecedent indebtedness was a valuable consideration to support the transfer of commercial paper as security and rendered the pledgee thereof free from equities between the original parties. (*Payne* v. *Bensley,* 8 Cal. 260 [68 Am. Dec. 318] ; *Robinson* v. *Smith,* 14 Cal. 94; *Naglee* v. *Lymann,* 14 Cal. 450; Jones' Pledges and Collateral Securities, 2d ed., sec. 128; Pomeroy's Equity Jurisprudence, 4th ed., secs. 480, 749.) While these cases dealt with a *bona fide* purchaser under the law-merchant, the reasoning there adopted for holding the antecedent debt a valuable consideration was not based upon the peculiar requirements of commerce and mercantile business, and, in *Frey* v. *Clifford,* 44 Cal. 335, 342, the general rule was definitely laid down, and has never since been receded from in this state, 'that a mortgagee, in a mortgage given for the security of a pre-existing debt, is to be regarded in this state as a purchaser for a valuable consideration,' and a subsequent mortgage given in security for an antecedent debt was held to prevail over a prior unrecorded transfer. In *Fowles* v. *National Bank of California,* 167 Cal. 653 [140 Pac. 271], after reviewing the authorities in this state, the court held that a pledgee of shares of stock which had been

transferred as security for a pre-existing indebtedness was a pledgee for value, and as such had rights superior to the owner of the shares who had intrusted them to the pledgor."

The judgment is affirmed.

Cary, P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 3, 1930, and the following opinion then rendered thereon:

THE COURT.—Appellant asks our reconsideration of this case with respect to one point only, that is, whether respondent should be considered a holder for "value" of the securities pledged to it. In deciding it to be a holder for value we declined to follow the apparently contrary ruling in *Fairmont C. Co.* v. *Los Angeles etc. Co.*, 33 Cal. App. 414, 418 [165 Pac. 553], in view of the language of section 3106 of the Civil Code and of various decisions of the Supreme Court summarized in *Smitton* v. *McCullough*, 182 Cal. 530, 537, 538 [189 Pac. 686, 689].

It is true that in 2 Pomeroy's Equity Jurisprudence, fourth edition, section 749, it is said that: "A conveyance of real or personal property as security for an antecedent debt does not, upon principle, render the transferee a *bona fide* purchaser, since the creditor parts with no value, surrenders no right, and places himself in no worse legal position than before," and that: "The rule has been settled, therefore, in very many of the states that such a transfer is not made upon a valuable consideration within the meaning of the doctrine of *bona fide* purchase."

The author says further, however, that: "In some states, on the contrary, even the securing of a preexisting debt is held to be a valuable consideration."

It is with reference specifically to the passages above quoted from Prof. Pomeroy's work that the Supreme Court in the passage from *Smitton* v. *McCullough, supra,* quoted in our original opinion, said: "The law in this state on this question is well settled to the effect that not only does an antecedent indebtedness constitute a valuable consideration for a transfer in satisfaction and discharge of such indebtedness *but it is also a valuable consideration within the*

*protection of the equitable doctrine of a bona fide purchase for a transfer merely as security for a preexisting debt."* (Italics ours.)

. While, therefore, were the question a new one, it might be open to argument whether the rule to which preference is given in Prof. Pomeroy's text and which is followed in many decisions from other jurisdictions cited in the petition for rehearing ought not to prevail, we must hold that the law in this state is settled to the contrary. It is true that in California *forbearance to sue* on an obligation, unaccompanied by any agreement to forbear, is held not in itself to constitute a consideration, at least for an executory promise. But that is not the same thing as to hold that the original obligation is not consideration for a subsequent pledge made to secure it.

Section 3106 of the Civil Code, cited in our original opinion, to the effect that an antecedent or pre-existing debt constitutes value, occurs, of course, in the title of the code devoted to negotiable instruments. It is claimed that since a stock certificate is not a negotiable instrument the section has no application to this case. That the definition of value, however, as applied to the consideration for the execution of a negotiable instrument applies also in determining whether there is consideration for a contract of another sort is, in *Smitton* v. *McCullough, supra,* explicitly held to have been established in this state since the decision in *Frey* v. *Clifford,* 44 Cal. 335, 342; as to which see, also, *Fowles* v. *National Bank of California,* 167 Cal. 653 [140 Pac. 271].

Appellant urges, further, that the doctrine that a pre-existing debt is a sufficient consideration for a contract of pledge, without any new consideration, has no application where the pledgor is a stranger to the debt. (Citing *Bynum Mercantile Co.* v. *First Nat. Bank of Anniston,* 187 Ala. 281, 284 [65 South. 815], and *Abraham* v. *First Bank of Cook County,* 37 Ga. App. 220 [139 S. E. 583].) It is not necessary for us to decide whether or not any such distinction exists in California, since in the instant case there is evidence in the record that Henry Schumann-Heink was himself a party to the making of the pledge. He, of course, was no stranger to the debt.

The petition for rehearing is denied.

A petition to have the cause heard in the Supreme Court after judgment in the District Court of Appeal, was denied by the Supreme Court on November 10, 1930.