HENRY JAMES *v.* MERIWETHER GRAHAM OLIVER Co., *et al.*\*

(*Nashville.*   December Term, 1925.)

1. **WAREHOUSEMEN.** Bank to which factors, in breach of duty to principal, pledged warehouse receipts to secure pre-existing debt, acquired good title; ''value.''

In view of Uniform Sales Act, section 32, as amended by Public Acts 1923, chapter 93, section 22, factor depositing cotton in warehouse and taking receipts had authority to negotiate them under section 38 and Uniform Warehouse Receipts Act, sections 40 and 47, and hence bank to which it pledged them, to secure pre-existing debt in breach of its duty to its principal acquired good title; an antecedent or pre-existing obligation constituting "value." (*Post, pp.* 530-533.)

Acts cited and construed: Acts 1909, ch. 336; Pub. Acts 1919, ch. 118; Uniform Sales Act, Secs. 32, 38; Acts 1923, ch. 93, Sec. 22.

Case cited and approved: Starkey v. Nixon, 151 Tenn., 637.

2. **FACTORS.** Factors' Act held repealed by implication by Uniform Sales Act in so far as it regulates transfer of negotiable documents of title.

Factors' Act, section 2, *held* repealed by Uniform Sales Act 1919, in so far as the first-mentioned act undertakes to regulate the transfer of negotiable documents of title by factor, especially in view of sections 23, 76, Sales Act. (*Post, pp.* 533, 534.)

Acts cited and construed: Acts 1915, ch. 98, sec. 2; Acts 1919, ch. 118.

NOTE.—Section 41 of the Warehouse Receipts' Act and section 32 of the Sales Act provide that a person to whom a negotiable receipt has

_____

\*On validity of factor's pledge of his principal's property, see note in 14 A. L. R., 423.

been duly negotiated acquires thereby "such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value."

*Headnotes 1. Warehousemen, 40 Cyc., pp. 417, 422; 2. Factors, 25 C. J., Section 153.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. A. B. Pittman, Judge.

Bell & Phillips, for plaintiff in error.

Randolph & Randolph, for defendant in error.

Mr. Chief Justice Green delivered the opinion of the Court.

Henry James, a negro farmer living in Arkansas, shipped his cotton to Meriwether Graham Oliver Company, cotton factors in Memphis, to be sold by them and to have the proceeds of the sale remitted to him. He was not indebted to the factors. When the cotton reached Memphis, it was deposited in a warehouse without the knowledge of James and negotiable warehouse receipts issued for it. These warehouse receipts were pledged by the factors to the Bank of Commerce & Trust Company to secure a pre-existing indebtedness of the factors to that bank. The factors failed and the bank sold the cotton represented by the warehouse receipts

152 Tenn.—34.

and applied the proceeds to its claim against the factors.

James brought suit against the factors and against the bank to recover the value of his cotton. There was a verdict and judgment in his favor against the factors, but the trial judge directed a verdict against him as to the bank. From this judgment denying him a recovery against the bank James appealed in error to the court of appeals. That court affirmed the judgment below, and James has filed a petition for *certiorari* to review the action of the court of appeals.

Section 40 of the Uniform Warehouse Receipts Act, chapter 336 of the Acts of 1909, is as follows:

"A negotiable receipt may be negotiated:

"(a) By the owner thereof, or

"(b) By any person to whom the possession or custody of the receipt has been intrusted by the owner, if, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of the person to whom the possession or custody of the receipt has been intrusted, or if at the time of such intrusting the receipt is in such form that it may be negotiated by delivery."

Section 47 of that act is in these words:

"The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the receipt was induced by fraud, or duress, or mistake, to intrust the possession or custody of the receipt to such person, if the person to whom the receipt was negotiated, or a person to whom the receipt was subsequently negotiated, paid value therefor, without notice of the breach of duty, or fraud, mistake, or duress."

Sections 32 and 38 of the Uniform Sales Act, chapter 118 of the Public Acts of 1919, are practically identical with the two sections of the Uniform Warehouse Receipts Act just above quoted, and these sections of the Sales Act have been strengthened by chapter 93, Public Acts 1923.

Under the provisions of these statutes, although the negotiation of these warehouse receipts by the factors to the bank was a breach of duty on the part of the factors, nevertheless the bank acquired good title to the receipts, if the factors were entitled to negotiate them. It is not contended that the bank had notice of the factors' breach of duty, and under these statutes an antecedent or pre-existing obligation is "value." *Starkey* v. *Nixon*, 151 Tenn., 637, 270 S. W., 980.

There has been some conflict in the authorities as to whether one who has come into possession of negotiable documents of title under circumstances, like those under which the factors here acquired these warehouse receipts, is entitled to negotiate them under the provisions of the statutes—whether they are persons "to whom the possession or custody of the receipt has been intrusted by the owner." See cases collected in note 14 A. L. R. 423.

This uncertainty has now been removed by chapter 93 of the Public Acts of 1923 amending the Uniform Sales Act, chapter 118 of the Public Acts of 1919.

"Sec. 22. Be it further enacted, that section 32 of said act is hereby amended by striking out all of the section which follows the word 'negotiated' and by substituting therefor the following: 'By any person in possession of the same, however, such possession may have been acquired if by the terms of the document, the bailee issuing it undertakes to deliver the goods to the order

of such person, or if at the time of negotiation the document is in such form that it may be negotiated by delivery,' so that the section shall read:

" 'Sec. 32. Be it further enacted, that (who may negotiate a document) a negotiable document of title may be negotiated by any person in possession of the same, however such possession may have been acquired if, by the terms of the document, the bailee issuing it undertakes to deliver the goods to the order of such person, or if at the time of negotiation the document is in such form that it may be negotiated by delivery.' "

The purpose of this amendment seems entirely plain on its face, but we may add a quotation from the report of the commissioners on uniform State laws for the year 1922:

When "the Bills of Lading Act was drawn, the commissioners on uniform State laws adopted the analogy of bills of exchange and promissory notes to its full extent, giving to the purchaser for value without notice, even from a thief or finder, of an order bill of lading a valid title. A still later statute, the Uniform Stock Transfer Act, contains a similar provision.

"The corresponding sections of the Uniform Sales Act and Uniform Warehouse Receipts Act do not go so far. . . .

"It is now proposed to harmonize all the statutes by giving to purchasers for value of order warehouse receipts as well as of order bills of lading and certificates of stock full negotiability."

This amendment of 1923 was made to the Uniform Sales Act. The Uniform Warehouse Receipts Act has not been expressly amended. These two acts, however, interlap, and the Sales Act regulates dealings in nego-

tiable documents of title as well as the Warehouse Receipts Act. The provisions of the last act must therefore control and are obviously decisive of this case.

It is insisted, however, for James that chapter 98 of the Public Acts of 1915, known as the Factors' Act, should rule this case. Section 2 of that act is as follows:

"Section 2. Be it further enacted that every person who shall hereafter accept or take any such merchandise in deposit from any such agent, as a security for any antecedent debt or demand, shall not acquire thereby, or enforce any right or interest in or to such merchandise or document, other than was possessed or might have been enforced by such agent at the time of such deposit."

This Factors' Act was taken from a New York statute, and while the language of section 2 is not so plain as it might be, we think it was intended to regulate the transfer by a factor of documents of title as well as deposits of merchandise.

By section 1 of this act a factor is deemed the true owner of merchandise intrusted to his possession for sale so as to validly convey to purchaser in good faith for value under section 41 of the Warehouse Receipts' Act.

In *Starkey et al.* v. *Nixon, supra,* the court noted that unless a restricted interpretation was given to section 2 of chapter 98 of the Acts of 1915, it would be repealed by implication by the Sales Act, chapter 118 of the Acts of 1919. In that case it was held that the Factors' Act did not apply to a transaction in which warehouse receipts were negotiated by a stockbroker—not by a factor. It was not necessary to go further.

Upon further consideration of the matter, we are satisfied the lower courts correctly held that chapter 98 of the Acts of 1915, the Factors' Act, was repealed by

James v. Meriwether Graham Oliver Co.

implication in so far as it undertook to regulate the transfer of negotiable documents of title by chapter 118 of the Acts of 1919, the Sales Act.

Several sections of the Sales Act deal with documents of title.

In section 76 warehouse receipts are included in the definition of documents of title.

That the legislature had the Factors' Act in mind when the Sales Act was passed is clearly shown by section 23 of the Sales Act, prescribing the rights of the parties when goods "are sold by a person who is not the owner thereof." In this section it is expressly provided that—"Nothing in this act, however, shall affect: (a) The provisions of any factors' acts, recording acts, or any enactment enabling the apparent owner of the goods to dispose of them as if he were the true owner thereof."

There does not seem to be any room for doubt about the meaning of the legislature. The Sales Act and the amendment thereto are repugnant to the Factors' Act in so far as the Factors' Act may limit the rights of the purchaser of a negotiable document of title from a factor to the same "right or interest in or to such merchandise or document" as was possessed or might have been enforced by such factor. The later acts must prevail to the extent of the conflict.

For the reasons stated, the petition for the writ of *certiorari* must be denied.

*Note. Section 41 of the Warehouse Receipts' Act and Section 32 of the Sales Act provide that a person to whom a negotiable receipt has been duly negotiated acquires thereby "such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value."