JOHN GAZZOLA v. LACY BROTHERS & KIMBALL et al.*

(Nashville. December Term, 1927.)

Opinion filed, December 3, 1927.

1. WAREHOUSE RECEIPTS. FACTORS ACT. UNIFORM
SALES ACT. FACTS.

Where it appears that one had shipped cotton from Arkansas to
factors in Memphis with instructions to hold same; the factor
placed same in a warehouse taking a warehouse receipt therefor
and negotiated the warehouse receipt in their own name to secure
their own indebtedness; a suit is brought by the owner of the
cotton against the factors and the bank; the controversy is to be
resolved by certain provisions of our Factors Act, the Uniform
Warehouse Receipts Act, and the Uniform Sales Act.    (Post,
p. 233.)

Citing: Acts of 1915, chapter 98; Acts of 1909, chapter 33; Acts of
1919, chapter 118.

2. FACTORS ACT. REPEAL. UNIFORM SALES ACT.

Section 2 of the Factors Act was repealed by implication by the
Uniform Sales Act only insofar as it regulates the negotiation of
negotiable documents of title.   (Post, p. 234.)

Citing: Acts' of 1915, chapter 98, sec. 2; James v. Meriwether
Graham Oliver Co., 152 Tenn. (25 Thomp.), 528.

3. WAREHOUSE RECEIPTS. FACTOR. NEGOTIABLE IN-
STRUMENT.

Where the factor had no authority to sell he had no title to the
goods, nor any ability to convey title of the warehouse receipts
representing such goods to a purchaser in good faith for value.
(Post, p. 236.)

Citing: Acts of 1909, chapter 336, sec. 41; Acts of 1919, chapter
118, sec. 32.

---

*On validity of factor's of his principal's property, see annotation
in 14 A. L. R., 423; 11 R. C. L., 763, 764.

On duty of factor, broker or commission merchant with respect to
care and protection of goods intrusted to him, see annotation in 17
A. L. R., 538; 27 R. C. L., 177.

4. WAREHOUSE RECEIPTS. NEGOTIABLE INSTRUMENT. TITLE. PLEDGOR AND PLEDGEE.

The general theory of the Factors Act is to protect the pledgee under the Act only when the pledgor has been intrusted with the property for the purpose of sale or transfer. It is not sufficient that the factor be intrusted with the possession of a bill of lading without the authority to sell. (Post, p. 236.)

Citing: Act of 6 George IV, Cap. 94; Cole v. Northwestern Bank, L. R., 10 C. P., 354; 14 A. L. R., p. 435, Note 14; Nickerson v. Darrow, 5 Allen (Mass.), 419; Thacher v. Moors, 134 Mass., 156; Frankinstein v. Thomas, 4 Daly (N. Y.), 256; Akron Cereal Co. v. First National Bank, 3 Cal. App., 198, 84 Pac., 778.

5. WAREHOUSE RECEIPTS. FACTORS. CUSTOM.

A custom which has grown up on the part of cotton factors to warehouse all cotton sent them for any purpose and to take out negotiable warehouse receipts in the factors own name, to facilitate the handling of cotton when it is desired to dispose of it, cannot be allowed to influence the decision in a case of this kind in view of the positive provisions of the Factors Act. (Post, p. 239.)

Citing: Acts of 1915, chapter 98, sec. 4; Pennsylvania R. Co. v. Naive, 112 Tenn. (4 Cates), 239.

6. WAREHOUSE RECEIPTS. FACTORS. FREIGHT AND STORAGE.

The payment of freight and storage charges upon a shipment of cotton are incidents to the business of the factor and the goods cannot be held "as a security for any advances to be made or obtained thereon" so as to render the warehouse receipts negotiable under the Factors Act. (Post, p. 240.)

7. WAREHOUSE RECEIPTS. FACTORS. OTHER PERSON.

A clause of the Factors Act which provides against the hypothecation of merchandise committed for transportation or storage only is directed against "a common carrier, warehouseman or other person." Other person means a factor, and it was within the contemplation of the Act that merchandise would be intrusted to factors for storage, notwithstanding the principal business of such agents was to sell goods intrusted to them. (Post, p. 240.)

Citing: Acts of 1915, chapter 98, sec. 4; Cook v. Beale, 14 N. Y. Sup., 497, 505.

8. **FACTOR. LEGISLATIVE POLICY. CUSTOM.**

Though the decisions of this court may have a bad effect upon the cotton trade, this court is dealing with the statute which reaches every angle of the controversy and cannot be influenced by policy which has been declared against by the legislation. (Post, p. 241.)

9. **WAREHOUSE RECEIPTS. BILLS OF LADING. FACTOR.**

Where the owner of merchandise did not intrust it to the factor for the purpose of sale or as a security for an advance, and the owner did not know of the existence of any document of title covering the merchandise except the bills of lading, he cannot be considered to have consciously authorized the issuance of the warehouse receipts, nor can a custom which tends to set at naught a declared statutory policy be recognized as imputing the owner's consent to the bringing out of these documents of title, and the pledging of such receipts cannot affect the owner's rights nor the title to the merchandise. (Post, p. 241.)

Citing: Acts of 1909, chapter 36; Acts of 1919, chapter 118; Acts of 1923, chapter 93; James v. Meriwether Graham Oliver Co., 152 Tenn. (25 Thomp.), 528.

10. **WAREHOUSE RECEIPTS. TITLE. NEGOTIABLE INSTRUMENT.**

Although under the amendment to the Sales Act a warehouse receipt may be good in the hands of a thief or finder, it must in the first instance be put out by authority expressed or implied, just as a promissory note. (Post, p. 241.)

Citing: Acts of 1919, chapter 118; Acts of 1923, chapter 93.

11. **APPEAL. CONFLICT OF FACT.**

Where there is no conflict in the proof there is no necessity of remanding the case for submission of any issue to the jury. (Post, p. 242.)

---

*Headnotes 1. Factors, 25 C. J., section 158; 2. Customs and Usages, 17 C. J., section 35; 3. Customs and Usages, 17 C. J., section 35; 4. Factors, 25 C. J., section 158 (Anno.); 5. Factors, 25 C. J., section 158; 6. Constitutional Law, 12 C. J., section 390; 7. Warehousemen, 40 Cyc., p. 414.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.—
HON. W. M. HALL, Special Judge.

CANADA & WILLIAMS for appellant.

WILSON, GATES & ARMSTRONG, HARSH & HARSH and J. D.
MARTIN, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of
the Court.

John Gazzola, a resident of Brinkley, Ark., during 1921
and 1922, shipped to Lacy Bros. & Kimball, cotton fac-
tors at Memphis, 207 bales of cotton to be held by the
factors subject to Gazzola's further orders.

Bills of lading were mailed by Gazzola to the factors,
upon which bills of lading the factors secured possession
of the cotton from the carriers and the factors then put
all the cotton in a warehouse, taking out negotiable ware-
house receipts in their own name. The Court of Appeals,
finds, and no objection is taken to this finding, that the
bills of lading were not used for any purpose except to
obtain possession of the cotton. There is, therefore, in
the case no question of the rights of the holder of a de-
rivative document of title, as distinguished from the
rights of the holder of a primary document of title. In
other words, the bills of lading were not immediately ex-
changed for the warehouse receipts.

Gazzola was not indebted to the factors at the time
these shipments of cotton were made, and is not now in-
debted to them, unless it·be for the storage charges and
insurance on said cotton, a trifling sum.

Notwithstanding, as the record clearly shows, Gazzola
instructed these factors not to sell the cotton until his
further orders, on November 15th, 1923, they did sell
50 bales without consulting him and so advised him. He
came to Memphis to investigate this matter within a day

or two and found that the factors had become insolvent. He also learned on this visit that the factors had warehoused his cotton, taking out negotiable warehouse receipts in their own name, and that these warehouse receipts had been pledged to banks in Memphis to secure indebtedness of said factors to said banks.

Gazzola made demand upon the banks for the return of the warehouse receipts which they declined. He then began suit to recover from the warehouse the cotton represented by said pledged receipts, to require the banks to deliver up said receipts and to refrain from negotiating them, and to obtain other appropriate relief. Defenses were interposed and the case came on duly for trial before the Chancellor and a jury. The Chancellor directed a verdict in favor of the banks. Upon appeal the Court of Appeals reversed the Chancellor's decree and held that Gazzola was entitled to the cotton, or rather to its proceeds, the cotton having been sold and the proceeds held subject to the outcome of the litigation. Petitions for *certiorari* were filed by the banks and the case has been elaborately briefed and argued in this Court.

(1) This controversy is to be resolved by certain provisions of the Tennessee Factors Act, Chapter 98 of the Acts of 1915, of the Uniform Warehouse Receipts Act, Chapter 336 of the Acts of 1909, and of the Uniform Sales Act, Chapter 118 of the Acts of 1919.

The Factors Act above mentioned contains the following provision:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that every Factor or other Agent intrusted with the possession of any bill of lading Customhouse permit or warehouseman's receipt for the delivery of any merchandise and every such factor or agent not having the documentary evidence of title, who shall

be intrusted with the possession of any merchandise for the purpose of sale or as a security for any advances to be made or obtained, thereon, shall be deemed to be the true owner thereof, as far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise, for any money advanced or negotiable instrument or other obligation in writing given by such other person upon the faith thereof.''

*(2)* Section 2 of the Act has been held repealed by implication in so far as it undertook to regulate the negotiation of negotiable documents of title. *James* v. *Meriwether Graham Oliver Co.,* 152 Tenn. 528. Neither Section 2 nor Section 3 of the Factors Act bears on this particular suit and it is not necessary to set these sections out.

''Section IV. Be it further enacted, that nothing contained in this Section shall authorize a common carrier, warehouseman or other person to whom merchandise or other property may be committed for transportation or storage only, to sell or hypothecate the same.''

This Statute was considered in the case of *James* v. *Meriwether Graham Oliver Co., supra,* by this Court and more elaborately in the opinion of the Court of Appeals. The opinion of this Court was rather inadvisedly published and its rationale is not altogether clear, read alone and apart from the opinion of the Court of Appeals and the briefs of counsel in that case. Counsel for both sides, therefore, herein are relying on *James* v. *Meriwether Graham Oliver Company,* but we think that decision does not reach the questions here presented.

In *James* v. *Meriwether Graham Oliver Company* the cotton was shipped to the factor to be sold as appears from the first sentence in that opinion. The case, therefore, fell directly within the provisions of Section 1 of

the Factors Act above quoted, that is to say, the factor was "intrusted with the possession of . . . merchandise for the purpose of sale." By further provision of Section 1, a factor so in possession of merchandise "shall be deemed to be the true owner thereof as far as to give validity to any contract made by such agent with any other person . . . for any . . . negotiable instrument or other obligation in writing given by such other person upon the faith thereof." So in *James v. Meriwether Graham Oliver Company* when the factor placed the cotton in the warehouse and obtained negotiable warehouse receipts upon the faith thereof, by the very language of the Statute he was deemed the true owner of the cotton so as to give validity to the negotiable receipts issued to him. This was decided by the Court of Appeals and really conceded in this Court and the argument here was upon other features of that case. Plainly a negotiable receipt may be negotiated by the owner thereof. Section 40, Chap. 336, Acts 1909; Section 32, Chap. 118, Acts 1919.

As heretofore stated, the proof in the case before us clearly shows that Gazzola did not intrust the factors with the possession of his cotton for the purpose of sale. The market was weak when the cotton was delivered to the factors and during the time they held it and Gazzola pointedly instructed them that he wanted the cotton held for a stronger market. His communications to this effect were acknowledged and the factors promised so to hold the cotton. By repaying or assuming the small expense to which the factors had been put in the payment of freight, insurance and storage on the cotton, Gazzola might have taken it out of their hands at any time and either sold it himself or turned it over to another agent for sale. The factors were not agents in possession of this merchandise for the purpose of sale at the time they

warehoused it and took out negotiable warehouse receipts nor at the time when they pledged said receipts. Under their agreement with Gazzola they could not be in possession of the cotton for purposes of sale until they had received directions to sell, for they had agreed to hold the cotton subject to further orders.

(3) Section 4 above quoted, makes the effect of the Factors Act clear by the denial of authority to a common carrier, warehouseman or other person to whom merchandise has been committed for transportation or storage to sell or pledge the same. To enable a factor to pass title to merchandise in violation of his trust, it must be merchandise that has been committed to him for the purpose of sale or to secure advances. He can not so deal with merchandise committed to him for storage, and the cotton here was undoubtedly committed to this factor to be held or stored until further orders of the owner.

The factor was not intrusted by the owner with any negotiable document of title in this case. The owner never took out or authorized any negotiable documents of title, unless it was the bills of lading which were surrendered, as before mentioned. The owner here intrusted the factor with merchandise only. The merchandise was placed with the factor for storage. The factor never received authority to sell and, therefore, when the factor undertook to negotiate these warehouse receipts to the banks this transaction did not carry title to the goods to the banks, because the person negotiating the receipts had no title to the goods nor any ability to convey title thereto to a purchaser in good faith for value. Section 41, Chap. 336, Acts of 1909, Section 32, Chap. 118, Acts of 1919.

(4) It is to be observed that the powers conferred upon a factor by Section 1 of the Factors Act accrue when

he is "intrusted with the *possession* of any bill of lading, etc.," but he must be "intrusted with the possession. of any merchandise for the *purpose of sale*, etc.," to acquire such powers with reference to the merchandise. Construing a similar provision of the Act of 6 George IV, Cap. 94, BLACKBURN, J., said that by such provision "the possession of bills of lading or other documents of title gave a power of selling or pledging the goods to those dealing *bona fide* with the possessor, beyond any which either by common law or by any provision of that Statute the possession of the goods themselves gave." *Cole* v. *Northwestern Bank*, L. R., 10 C. P. 354.

The editor of the Note 14 A. L. R., p. 435, speaking of Factors Acts says that "the general theory of the American Acts is that to protect the pledgee under the Act the pledgor must have been intrusted with the property for purposes of sale or transfer."

Thus it was held by the Massachusetts Court with respect to the pledgee of a factor, the latter having been employed to buy for his principal, that the pledgee was not protected by the Statute of that State which would have afforded him protection had he dealt with "a consignee or factor having possession of merchandise with authority to sell the same." *Nickerson* v. *Darrow*, 5 Allen (Mass.), 419.

In another case in the same State the owner intrusted wool to a person as a warehouseman to be stored in order to be sold later. Such person was also empowered as a broker to negotiate sales, subject to the approval of the owner, the broker having no express authority to close a sale himself. The Court held that the broker's pledgee was not protected as the pledgee of a "factor or other agent intrusted with the possession of merchandise for the purpose of sale." *Thacher* v. *Moors*, 134 Mass., 156.

In a New York case the owner intrusted a person with a picture to take to a particular dealer's place for exhibition and sale there. This person took the picture to the dealer and took from the dealer a receipt for the picture in his own name. The dealer's receipt for the picture was pledged by the person to whom it had been given for a loan. The Court held that the pledgee was not protected within the meaning of the New York Factors Act (which the Tennessee Act follows) affording protection to the pledgee of one to whom the possession of merchandise has been intrusted for the purpose of sale. *Frankinstein* v. *Thomas*, 4 Daly (N. Y.), 256.

The California Statute provides that "one who has allowed another to assume the apparent ownership of property, for the purpose of making any transfer to it, can not set forth his own title to defeat a pledge of the property, made by another to a pledgee who received the property in good faith in the ordinary course of business and for value." It was held necessary for the pledgee, to obtain the benefit of this Statute, to show that "the real owner of the property has not only 'allowed' the pledgor to assume its apparent ownership, but has done so 'for the purpose of making any transfer' of it. The pledgee must show the existence of these conditions, as well as good faith on his part, before he can claim a title superior to that of the original owner." *Akron Cereal Co.* v. *First National Bank*, 3 Cal. App., 198, 84 Pac. 778.

Other cases of like tenor are connected in the Note above referred to, 14 A. L. R. 435.

In *Cole* v. *Northwestern Bank, supra,* construing the English Statute then in force, an agent who did a double business of warehousing wool and selling it as a broker was held incapable of making a valid pledge of wool which had been intrusted to him to store, but which he

156 Tenn.—16.

had not been authorized to sell, though it was the course of business between him and his customer to make sales, when directed, of wool sent to him for storage.

The present English Factors Act, passed in 1889, 52 and 53 Victoria, Cap. 45, goes much further than the Tennessee Factors Act, and more recent English decisions are not helpful in the construction of our Statute. See *Folkes* v. *King* (1923), 1 K. B. 282, 12 B. R. C., 882.

(5) It is argued by counsel for the banks that there has grown up a custom in Memphis on the part of cotton factors to warehouse all cotton sent to them for any purpose and to take out negotiable warehouse receipts in the factors own names, to facilitate the handling of the cotton when it is desired to dispose of it. It is said that Gazzola knew of this custom and contracted with reference thereto; that the factors in this case in warehousing the cotton and taking out negotiable receipts acted in good faith and in the usual course of business and within their authority as Gazzola's agents. It is accordingly urged that Gazzola authorized the procuring of the warehouse receipts by the factors and, therefore, must be held to have intrusted them with possession of the receipts themselves.

There is plausibility to this argument and the practice indicated seems to have prevailed to some extent in Memphis in recent years. We do not think, however, that such a custom can be allowed to influence the decision of the case before us in view of the positive provision of Section 4 of the Factors Act.

It is there enacted that nothing contained in this Section (obviously a misprint for Statute) shall authorize a common carrier, warehouseman or other person to sell or hypothecate merchandise committed to him for transportation or storage only. In the face of this direct de-

nial of the power of such an agent to pledge property committed to him for storgae only, the Statute could not be construed so as to permit the agent to accomplish the same end by the device of warehousing such property and hypothecating receipts for same. So to hold would be to flout the prohibition of the Statute, and no custom or usage can be given such an effect. *Pennsylvania R. Co.* v. *Naive,* 112 Tenn., 239, and cases cited.

(6) Freight was not paid on the cotton involved by Gazzola when he shipped it to the factors from Brinkley, Ark. They paid the freight and they also paid storage and insurance premiums on the cotton. It is, therefore, insisted that the factors have been intrusted with the possession of the cotton "as a security for any advances to be made or obtained thereon" within the provision of Section 1 of the Factors Act. We think this argument is not sound. Nothing has been advanced to Gazzola. The factors paid or assumed these charges as an expense of their business. The proof clearly shows that such expenses are ordinarily assumed by all factors in handling cotton sent to them. Sums so expended are taken out of the price of the cotton when sold. We think that the factors made this outlay as an incident to their own business, a trifling outlay which all factors undertake as a detail of their calling. Such dealing attracts customers and is in the interest of the factors.

(7) It will be noticed that the prohibition in Section 4 of the Factors Act against the sale or hypothecation of merchandise committed for transportation or storage only is directed against "a common carrier, warehouseman or other person." *Other person* means a factor. Such construction was given to these words in New York as early as 1830. *Cook* v. *Beale,* 14 N. Y. Sup., 497, 505. This Section of our Factors Act of 1915 was taken from

a New York Statute and comes into the Tennessee Laws with the construction given it in the former State. So construed, it is obvious that the Tennessee Factors Act contemplated that merchandise would be intrusted to factors for storage, notwithstanding the principal business of such agents was to sell goods intrusted to them.

(8)  Much has been said as to the bad effect upon the cotton trade that counsel suppose an affirmance of the judgment of the Court of Appeals will have. We are, however, dealing with a Statute, Chapter 98 of the Acts of 1915, and we think that Statute reaches every angle of this controversy. The Legislature has settled all questions of policy that are here involved.

(9)  The owner of this merchandise did not intrust it to the factors for the purpose of sale or as a security for any advance. The owner did not know of the existence of any document of title covering the merchandise, except the bills of lading which were surrendered. The owner, therefore, can not be considered to have consciously authorized the issuance of the warehouse receipts pledged by the factors, nor can a custom which tends to set at naught a declared statutory policy, be recognized as imputing the owner's consent to the bringing out of these documents of title. The pledging of such receipts, therefore, in our opinion cannot affect the owner's rights nor the title to the merchandise under any provision of the Warehouse Receipts Act, Chapter 336 of the Acts of 1909, or of the Sales Act, Chapter 118 of the Acts of 1919, or of the amendment to the Sales Act, Chapter 93 of the Acts of 1923, referred to in *James v. Meriwether Graham Oliver Co., supra.*

(10)  Although under the last Act a warehouse receipt may be good in the hands of a thief or finder, it

must in the first instance be put out by authority, express or implied, just as a promissory note.

(11)  Some other contentions are made by counsel for the banks which do not require discussion. What we have heretofore said is decisive of the case. There seems to be no conflict in the proof and no necessity of remanding the cause for submission of any issue to a jury.

It follows that the judgment of the Court of Appeals will be affirmed.